GEORGE L. KURTZ v. DANIEL E. MILLER, *et al.*

1. SALE OF GOODS, *Verdict Against the Good Faith of, Sustained.* A., a merchant owning a stock of goods of about $6,000 in value, and in debt about $3,500, sold his entire stock to his son, a young man just of age, and who had been two and a half years a clerk in his employ, at a salary of $25 per month and board. Many of the vendor's debts were long past due, and the creditors pressing. The sale carried all property subject to execution. The consideration received was simply promissory notes of the son, running from three months to three years, so divided that over half the amount did not come due for more than two years, and unsecured save by a slight insurance on the stock. The son was without property, save a small piece of real estate, of little value and incumbered, conveyed to him by his father just prior to this purchase, and in alleged satisfaction of a claim for wages. The sale was evidenced by a formal bill of sale, prepared by an attorney. Shortly after the purchase the son went away to school, leaving his father in possession and acting for him under a formal power of attorney, duly prepared and executed. *Held*, In an action between the son and the sheriff levying process upon the goods at the suit of the creditors of the father, that a verdict in favor of the sheriff and against the good faith of this sale was sustained by the evidence.

2. FACT, *Not Proving Good Faith.* The fact that the jury in answer to special questions returned that the price named in the bill of sale was a fair and reasonable price for the goods, and that the promissory notes of the son were executed and delivered as consideration of the purchase, does not overthrow the general verdict, nor prove that the sale was in good faith.

3. FRAUDULENT INTENT, *Evidence of.* To avoid such a sale, proof of a fraudulent intent on the part of the vendor is essential, and his statements as well as his acts are admissible as evidence of such intent.

4. INSTRUCTION, *Not Erroneous.* Direct testimony that such a sale was fraudulently made is seldom obtainable. The intent is known only to the parties, and if wrongful they do not hasten to tell it. And an instruction calling attention to the character of the evidence to be expected upon the question, is not erroneous, and does not compel the jury to exclude from their consideration the direct testimony.

5. WRONGFUL INTENT; *Duty of Purchaser.* While wrongful intent on the part of the vendee, equally with such intent on the part of the vendor, is essential to avoid such a sale, yet if the vendee is in such a situation that a reasonably prudent man therein could and would have known of the fraudulent intent of the vendor, it is sufficient. A purchaser may not blind his eyes to visible facts, and say that he had no actual and express knowledge of any fraudulent intent on the part of his vendor.

*Error from Rush District Court.*

REPLEVIN, brought by *Kurtz* against *Miller*, as sheriff of Rush county, and his deputy, to recover the possession of a certain stock of merchandise. Trial at the November Term, 1880, of the district court, and verdict and judgment for the defendants. *Kurtz* brings the case here. The opinion states the facts.

*Stumbaugh & Gunn*, and *Fierce & Cline*, for plaintiff in error.

*J. W. Ady*, and *G. W. Holmes*, for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by George L. Kurtz in the district court of Rush county, against the sheriff of that county and his deputy, for the purpose of replevying certain goods taken by said officers under process against Louis Kurtz, the father of plaintiff. The vital question in the case is, whether the property belonged to the plaintiff, or to his father, and in respect to this question, the undoubted facts are, that Louis Kurtz, the father, was, up to August 11th, 1879, the unquestioned owner of the said property, the same being a stock of mercantile goods. On that day it is alleged that a sale was made by the father to the son of this stock, and if this sale was *bona fide*, and for sufficient consideration, the sale ought to have been upheld; but on the other hand, if it was a sham, and made simply to remove the goods from the reach of creditors, the sale was void, and ought to fail. The jury found in favor of the sheriff and against the sale. The court approved the verdict, and rendered judgment accordingly. Of this judgment the plaintiff complains, and hence this proceeding in error.

Several matters of error are alleged, but primarily the question for our consideration is one of fact, and upon that we think the conclusion of the jury was right. The testimony convinces us, as it did the jury, that this alleged sale was a

1. Sale of goods, verdict against the good faith of, sustained. sham — simply a pretense — to remove the property from the process of creditors. There was neither honesty nor consideration to support the pretended sale as against the rights of creditors. Evidently the thing was a trick, performed in the hope that, by color of fairness and by show of regularity, the claims of honest creditors would be delayed, if not defeated.

With this general statement of the impression made upon us by the facts as displayed in the testimony, we pass to a consideration of the particular questions presented. Preliminary thereto, we may remark that the defendant in the several creditors' proceedings was a man of mature age, over fifty, by his own testimony; that he sold to his son, a boy just arriving of age; that the son had no property except a little real estate in Butler county, conveyed by his father to him, of doubtful value and incumbered, conveyed shortly prior to this sale in satisfaction of an alleged indebtedness for wages. To this son, thus really without property, said Louis Kurtz conveyed substantially his entire property, valued at $6,579, taking therefor in payment notes of the purchaser, running at intervals of from three months to three years, unsecured save by an insurance to a small amount upon the property sold. The notes to become due the first year were in the sums respectively of $150, $200, $300, and $400, while those to become due the last year were in the sums respectively of $1,043.33, $1,043.33, $1,043.33, and $417.20; so that the larger bulk of the payment was, by the terms of the sale, not to be paid till after two years.

Again, shortly after the alleged purchase and transfer of possession, the purchaser went away to Newton to attend school, leaving his father in possession with a power of attorney to act for him in the management of the business. And again, the vendor at the time of the sale was in debt $3,500, according to his own showing, and was pressed by some of his creditors whose claims had been long due. Further than this, his son had been in his employ as a salesman for two years and a half, at wages of $25 per month and board, and in the very

nature of things could not have been otherwise than somewhat conversant with his father's financial condition.

Plaintiff claims that notwithstanding the general verdict in behalf of the defendants, the jury by their answers to certain special questions showed that the sale was one which ought to be upheld. These answers simply disclose that the price agreed upon, $6,579, was a fair and reasonable price, and that the purchaser gave his promissory notes running as heretofore stated in payment thereof; but these facts in no manner prove good faith in the transaction. If they did, all that a vendor would have to do to put a fraudulent sale of his beyond challenge would be to execute a bill of sale in writing to some one who would return to him his promissory notes therefor. It is very easy to do a little writing, but that never sustains a transaction otherwise fraudulent as against creditors. There is always a question of good faith, and that question cannot be shut out by the mere form of the transaction. It is doubtless true, as counsel state, that the first two notes have been paid, but they were paid in this way : The father and vendor, being in possession during the absence of his son, and with the latter's consent, took money as it was paid in in the course of business and applied it on the notes. This is not enough to show that the verdict of the jury was wrong.

*2. Fact, not proving good faith.*

A further matter of consideration is this : The court, over the objection of the plaintiff, admitted in evidence several letters written by the father. These letters, written about the time of the sale, were not directly in reference to it, but written to his various creditors with explanations of his non-payment and statements of his plans for the future. They were admitted, as ruled by the court, for the single purpose of showing the intent with which the vendor acted in the sale. For this they were competent, and the court committed no error in admitting them. In order to vitiate this sale, it was necessary to show that the vendor made it with a fraudulent intent, and that fraudulent intent is disclosed by his words as well as by his deeds.

*3. Fraudulent intent, evidence of.*

Another matter of objection is to the language used by the court in one of its instructions, which is as follows: "Fraud is very difficult of proof. It is generally devised secretly, and you cannot expect direct evidence of it, as one of the objects is to evade proof; but close relationship of the parties, the embarrassed condition of the grantor, great anxiety and particularity as to form in the sale, taking unsecured notes on long time, the grantee's inability to make the purchase in a large amount, frequent removal and changes in business, the grantee's failure to pay taxes, and false and contradictory statements, are all circumstances which you should take into consideration in determining the unsoundness of the transaction." Counsel object specifically to that clause in this instruction in which the court says: "You cannot expect direct proof," etc., and say, " this is in effect saying to the jury they must not look for or expect direct proof in cases of this kind, but must be satisfied with the kind of evidence already before them; in other words, that they shall not be permitted to say that it requires more and direct proof to convince them." We cannot think the language quoted open to any just criticism. It is a rule — not a mere technical rule of law, but

4. Instruction, not erroneous.

one of fact, founded upon the common experience of all men — that direct evidence of fraud in transactions like these is seldom to be had. A fraudulent purpose is known only to the parties to the transaction, and they do not hasten to tell it. As a rule, fraud, therefore, only is disclosed by the condition of the parties, the details of the transaction, and the surrounding circumstances. The evidence is usually circumstantial, and the court in so stating only stated a fact which is as old as fraudulent sales themselves. It in no way excluded or forbade the consideration of any direct evidence, and was designed only to caution the jury that they were not bound by the mere form of the transaction, but could look behind its regularity to the purpose and designs of the parties to it.

The court refused this instruction asked by plaintiff, that "if the jury believed that Louis Kurtz did sell said goods

with the intent on his part to hinder, delay, or defraud his creditors, but the plaintiff, George L. Kurtz, had no knowledge of such intent, then in that event they must find for the plaintiff." Of this the plaintiff complains; he insists that the proposition embodied in such instruction is correct, and has been sustained by this court in the two cases of *Diefendorf v. Oliver*, 8 Kas. 365, and *Wilson v. Fuller*, 9 Kas. 176. It is undoubtedly true, as was noticed in those opinions, that wrong on the part of the vendee is equally essential with wrong on the part of the vendor, and if the court had ignored this principle altogether, there would be just foundation for a charge of error; but the court in its general instructions charged as follows: "If there was a sale to George L. Kurtz, then, even though Louis Kurtz intended to defraud his creditors by that sale, yet unless George knew of such intention, or was in such a situation that a reasonably prudent man in his situation should and would have known of such intention on the part of his father, plaintiff can recover." Instead of limiting the question to one of actual and express knowledge on the part of the vendee, the court held that he was partaker of the wrong if his situation was such that a reasonably prudent man therein could and would have known of the fraudulent intent; in other words, the vendee may not blind his eyes to the facts which surround him, and

5. Wrongful intent; duty of purchaser.

protect himself by the claim that he had no actual and express knowledge of his vendor's fraudulent intent. This we think is correct. It is generally true that knowledge of facts sufficient to put one upon inquiry, is equivalent to actual knowledge of the ultimate fact. There is nothing in the opinions in the two cases cited that conflicts with this proposition; the matter was not referred to in them, simply because the question was not in the case. It is in this case, and. the court had to rule upon the question, and ruled correctly. The vendor attempted to show that his son, though a salesman in his employ for two years and a half, was ignorant of his father's financial condition; but the testimony offered to establish this was very unsatisfactory. The jury

evidently and justly believed that if he did not know the exact financial condition, he knew enough to know that his father was embarrassed, and that there was something wrong in the attempted sale.

So far as the application for a new trial on the ground of newly-discovered evidence is concerned, it is enough to say that no sufficient diligence was shown prior to the trial.

Taking the whole case, it is apparent that the case was fairly tried, and that the decision was what it ought to be under the testimony. The judgment will therefore be affirmed.

All the Justices concurring.