Scheble v. Jordan.

A. R. SCHEBLE v. A. P. JORDAN, *et al.*

| 30 | 353 |
| 68 | 152 |

| 30 | 353 |
| d78 | 555 |

1. DECLARATION OF VENDOR, *in Derogation of Title.* A declaration of one from whom a party obtains title to property, made after the transfer of title and in derogation of that title, is inadmissible in evidence against the latter.

2. PURCHASE OF PERSONAL PROPERTY; *Intent of Vendor and Vendee.* A *bona fide* purchaser of personal property obtains a good title to it, although his vendor may have held it under only a voluntary transfer from a former owner, and in fraud of the latter's creditors.

3. TITLE—*Partly Absolute, Partly in Trust.* Where a bill of sale conveys two distinct pieces of property, and it appears by parol testimony that one piece was conveyed absolutely and the other only upon trust, the stipulations respecting the latter do not by reason of there being but one bill of sale affect the title conveyed of the former.

4. PRACTICE *in Supreme Court.* After a case has been submitted to this court upon its merits, a defendant in error has no legal right to interpose a motion to dismiss on the ground of defects therein, and it is discretionary with the court to entertain and examine such a motion.

*Error from Reno District Court.*

ACTION by *Scheble* against *Jordan* and another, to recover the possession of two horses. At the September Term, 1881, of the district court, defendants had judgment against plaintiff, who brings the case here. The opinion states the facts.

*Scheble & Vandeveer,* for plaintiff in error.

*Zimmerman & Taylor, W. R. Brown,* and *F. E. Gillett,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action of replevin for two horses. The case was tried by a jury; verdict and judgment were for defendants. Plaintiff alleges error. The plaintiff claimed title by purchase from one Mrs. E. J. Robinson, on March 7, 1881. He introduced in evidence the bill of sale, proved that the horses were delivered to him on that day, and that he had kept the possession until March 14th, when they

23 — 30 KAS.

were taken on an attachment against C. Bomgardner and J. C. Robinson, the husband of Mrs. E. J. Robinson.  After the plaintiff had finished his testimony, the defendants introduced certain witnesses who testified, over plaintiff's objection, as to the testimony given by Mrs. E. J. Robinson on a prior trial of this case before a justice of the peace.  It was not pretended that Mrs. Robinson was dead; on the contrary, it appeared that she was then living at the house of one of the witnesses.  It amounted to simply this: the defendants were permitted to prove the declarations of Mrs. Robinson, made after she had parted with the title and delivered the possession of the property, and declarations making against the title she had attempted to convey.  This is manifestly error. In *Sumner v. Cook*, 12 Kas. 165, we said in reference to a similar declaration:

" It was admissible only as a declaration by the vendor of defendants, qualifying his title.  Such a declaration, to become evidence, must have been made by that vendor while holding possession.  A declaration before he received, as well as one after he parted with his interest, is inadmissible."

See also the cases cited in that opinion, as well as Bump on Fraudulent Conveyances, page 548.  As this testimony was erroneously received, and very likely had much weight with the jury, the error was a material one.

Error is also alleged in reference to the instructions.  We shall not attempt to notice them in detail, but simply make these general comments; and preliminary thereto it will be necessary to state a few more of the facts disclosed by the testimony.  J. C. Robinson and C. Bomgardner had been at one time the owners of this property as well as of some fifty-seven head of cattle which were running at large on the range south of Dodge City.  They executed a bill of sale of all the property to Mrs. Robinson, the wife of J. C. Robinson, and plaintiff's vendor.  That bill of sale was executed February 1, 1881.  On February 7, she executed a bill of sale of the same property to plaintiff under an agreement, as he testified, that the horses were to be his absolutely, and that he was to

gather in the cattle and dispose of them, and after paying actual expenses return her the balance. The horses were seized on an attachment against C. Bomgardner and J. C. Robinson. Now we remark, that although the transfer from Bomgardner and J. C. Robinson to Mrs. Robinson may have been without consideration and therefore subject to be defeated by their creditors, yet having title and possession, if she conveyed them to plaintiff, and such conveyance was *bona fide* and upon a valuable consideration, they then passed beyond the reach of Bomgardner's and Robinson's creditors. Although she may not have been a *bona fide* purchaser from them, yet he was from her, and being such, took a perfect title. ( *Wilson v. Fuller*, 9 Kas. 176; Bump on Fraudulent Conveyances, pp. 475, and following.)

Again, the bill of sale from Mrs. Robinson to plaintiff included the cattle and the horses. He testified that the horses were sold to him absolutely; the cattle were turned over to him to be collected and sold, and the net proceeds returned to Mrs. Robinson. Whatever may have been the effect of the stipulation in respect to the cattle upon his right to hold them against the creditors of Bomgardner and Robinson, such stipulation in no manner affected his right in respect to the horses. There were really two contracts entered into between Mrs. Robinson and the plaintiff: one in respect to the horses, and one in respect to the cattle; and the fact that one bill of sale recited the conveyance of both, did not make them one contract to the extent that the stipulations respecting one class of property affected the title to the other. (*Kayser v. Heavenrich*, 5 Kas. 324.) It is unnecessary to go further into detail in respect to these instructions.

We might justly close this opinion here, but shall notice another matter. This case has been pending in this court since December 26, 1882. It was set for hearing at the March (1883) session, was then continued to June, and from June to July, and set for hearing on July 6. On that day it was submitted, briefs of plaintiff in error filed, and defendants in error given until July 15, to file briefs. Five days

after the case was thus submitted on its merits, and after the court had adjourned until September, defendants in error filed a motion to dismiss the case, on the ground that more than a year had intervened between the rendition of the judgment and the filing of the case in this court. Such practice cannot be encouraged. Defendants in error have no right to insist upon the hearing of such a motion at so late a day. It is purely a matter of discretion whether this court will then consider it. Nevertheless we have examined it, and think it ought to be overruled. The case was filed here, as stated, December 26, 1882, and the judgment was entered September 20, 1881, but a motion for a new trial was filed the day after, and not passed upon until December 28, 1881—less than a year prior to the filing of the case in this court. Hence, any questions presented in such motion can be considered, and the proceedings in the trial examined for the purpose of determining those questions. (*Osborne, Ex'r, v. Young,* 28 Kas. 769.) It is true, error in the admission of testimony is not stated as one of the grounds for a new trial, so that the matter first noticed by us may not be among the questions fully preserved, but error in the instructions is alleged, and so they are unquestionably open for consideration.

The motion to dismiss will be overruled, the judgment reversed, and the case remanded for a new trial.

All the Justices concurring.