## C. T. HASKETT v. F. F. AUHL et al.

### No. 126.

1. FRAUD—*When Knowledge of May Be Inferred.* When the circumstances surrounding a fraudulent transfer of property by an insolvent debtor are out of the usual course of business, and are such as to excite the suspicions of a reasonably prudent man, the jury may infer knowledge on the part of the vendee of the fraudulent character of the transaction.

2. ———— *Fraudulent Transfer—Knowledge Presumed.* When a debtor disposes of his property, with the intent to defraud his creditors, to one having knowledge of facts sufficient to excite the suspicions of a reasonably prudent man and put him upon inquiry, such vendee will be presumed to have knowledge of all facts which such inquiry, if reasonably pursued, would have disclosed.

3. ———— *Evidence—Proof of Intent.* The conduct of an insolvent debtor at the time of and immediately after a claimed fraudulent transfer of property may be shown as a part of the *res gestæ*, for the purpose of proving the intent with which such transfer was made.

MEMORANDUM.—Error from Marshall district court; R. B. SPILMAN, judge. Action in replevin by C. T. Haskett against F. F. Auhl and T. D. Grimes. Judgment for defendants. Plaintiff brings the case to this court. Affirmed. The opinion herein, filed June 4, 1896, states the material facts.

*E. A. Berry,* and *Mann & Redmond,* for plaintiff in error.

*W. J. Gregg,* for defendants in error.

The opinion of the court was delivered by

GARVER, J. : The plaintiff, C. T. Haskett, claiming to be the owner of a stock of merchandise, brought this action in the district court of Marshall county to recover a portion thereof which had been attached as the property of one M. J. Thayer by the defendant, as sheriff, in an action pending in said court. Haskett claimed ownership by virtue of a sale and transfer of the goods from M. J. Thayer to him, made October 3, 1892. The validity of said transfer was attacked by the defendant, as having been made in fraud of the creditors of Thayer. The plaintiff claims that he purchased the goods in good faith, without any notice or knowledge of a fraudulent intent on the part of Thayer, if such intent existed, and his counsel strenuously insist that the evidence is insufficient to connect the plaintiff with any such wrongful purpose. In view of the insistence of counsel, we have carefully read the evidence contained in the record. The examination thus made discloses evidence of such facts and circumstances as, in our opinion, justified the jury in finding that Thayer disposed of his stock of goods with the fraudulent intent alleged ; that the transaction was of such a character that it should have aroused the suspicions of the plaintiff, and led him to the making of inquiries which would have informed him of the fraudulent character of the transaction.

Thayer was a merchant at Vermillion, in said county,

where he had been engaged for some time in business, carrying a stock of goods which he supposed would invoice about $5,000. At this time he was largely indebted to wholesale merchants and others, and was being pressed for payment of past-due bills. He and the plaintiff were entire strangers to each other previous to October 3, the day of the sale, and were brought together by C. J. Haskett (a brother of the plaintiff), who was acquainted with Thayer, and had some previous conversation with him relative to the sale of his stock of goods. On the morning of October 3, the plaintiff made a hasty examination of the store, concluding that it was "about a $4,000 stock," and which subsequently invoiced at something over $4,100. After negotiating about 30 minutes, a price was agreed upon and the stock purchased by Haskett for $1,500 in money, and the conveyance to Thayer of 160 acres of land in Missouri, which the testimony shows to have been worth not to exceed $400, but which was spoken of by Haskett as being worth $2,000. Haskett, however, admitted upon the trial, that he had never seen the land and knew nothing of its value. Immediately upon receiving a deed to the Missouri land, Thayer made a mortgage thereon to one William Hawley, purporting to secure the payment to said Hawley of $1,050, but which was a mere fiction. Haskett was a resident of Iowa, with some previous knowledge of goods of the kind purchased, and was apparently able to form a reasonably fair estimate of the value of such a stock, upon an examination of the same without an invoice. As soon as the trade was consummated, Haskett, with the assistance of three of four other persons, began packing the goods into boxes and removing them to the railway

depot for the purpose of shipping them to his home in Iowa. About noon of October 3, when in the midst of the packing, the proceedings were interrupted by this and other attachments, at the suit of the creditors of Thayer.

It is evident that the price paid for the stock of goods was $1,200 or $1,500 less than it was worth. This, with other circumstances, was an undoubted mark of fraud. (*Dodson v. Cooper*, 50 Kan. 680; *Martin v. Marshall*, 54 id. 147.) The great haste which characterized the transaction, and Thayer's willingness to take an unknown, and what in fact was a comparatively worthless piece of land in another state, with only the slightest showing of interest in its value, together with his patent anxiety to close out his stock, even if at a great sacrifice, were sufficient to excite the suspicions of a prudent man dealing with him that he was influenced by motives other than those which enter into ordinary business transactions. The haste also which the plaintiff manifested in the purchase of the goods and their removal to another state was unusual, and was, at least, a proper circumstance for the jury to consider in determining what he probably thought of the transaction. Such departures from the usual course of business are always suspicious circumstances and badges of fraud. (*Kurtz v. Miller*, 26 Kan. 314; *Gollober v. Martin*, 33 id. 252.) That a fraud was being perpetrated upon the creditors is very clear. We think it is clear, also, that there was sufficient evidence to show that the plaintiff was a responsible party to it.

Complaint is made of the instructions which the trial judge gave to the jury. Those complained of were as follows:

" 7. I further instruct you, that in cases of this

kind knowledge sufficient to arouse the suspicions of a reasonably prudent man and put him upon inquiry is, as a general proposition, equivalent to knowledge of the ultimate fact which might be ascertained by such inquiry; and if, in these cases, you believe from the evidence that the alleged sale of the goods in controversy to the plaintiff was made by M. J. Thayer with intent to defraud her creditors, and that the plaintiff had enough knowledge to arouse the suspicion of a reasonably prudent man, under similar circumstances, that such intent existed, and put him upon inquiry; and if by such inquiry he could have ascertained that said intent did exist, then he must be held to have had knowledge that it did exist.

"8. I further instruct you, that if you find from the evidence that M. J. Thayer sold and conveyed her property to the plaintiff herein for the purpose of defrauding her creditors, or of hindering or delaying them in the collection of their claims; and if you further find from the evidence that plaintiff purchased said property with a knowledge of such intent on the part of said M. J. Thayer; or if you find from the evidence that plaintiff, by exercising such care, prudence and diligence as an ordinarily prudent man would have exercised, might have discovered or obtained information, however slight, that said M. J. Thayer was selling and conveying such property for the purpose of defrauding her creditors; and if you find that plaintiff made no inquiry or exercised no such care, prudence or diligence to learn the intent or purpose of M. J. Thayer in making such sale, then, in law, the plaintiff would be deemed to have had knowledge of the fraudulent intent of M. J. Thayer, if such intent existed, and you should return a verdict for the defendants, even though plaintiff may have paid full value for the goods."

We think the instructions are substantially correct, and are not subject to the objections made by counsel. The eighth paragraph is probably not as clear in its

statement of the rules of law as it might be, but we think a jury would have no difficulty in understanding it properly.

It is further objected that the court permitted evidence of statements made by Thayer subsequently to the time when the transfer was completed. The conversations testified to occurred upon the very day of the transfer. They had no direct reference to the transfer, but related to claims against Thayer or concerned the Missouri land. The evidence upon these matters, as shown by the record, is of very little importance; and, even though it had been improperly admitted, it would not be sufficient to justify the reversal of the judgment. The general rule undoubtedly is that the declarations of a vendor of property, made after the sale, are not admissible for the purpose of invalidating it; yet where the transfer is claimed to have been fraudulent, and the intent of the vendor is a material subject of inquiry, great latitude is allowed in showing the facts and circumstances surrounding the transaction. In such case, it is proper to show the acts and declarations of the vendor, at the time of and immediately after the sale, for the purpose of establishing the intent with which it was made on his part. (*Douglas v. Hill*, 29 Kan. 527; *National Bank v. Beard*, 55 id. 773; *Bowersock v. Adams*, 55 id. 681, 683.) But the evidence complained of in this case was not of declarations of the vendor concerning the past transaction; it was with reference to present conduct. The evidence tended to show the then existing condition of things, as a basis for inferences which might reasonably be made as to the motives which induced the transaction which was the subject of the investigation. It was not attempted to prove a past fact or condi-

tion by the mere declarations of one of the parties thereto.

Upon the whole record we perceive no substantial error. The judgment will be affirmed.

All the Judges concurring.