JAMES S. SMITH, *Sheriff*, AND JOHN JOHNTZ *et al.*, *Co-partners as Malott & Co.*, v. LYDIA A. WILSON.

No. 200.

1. EVIDENCE — *error in preliminary questions not prejudicial nor necessarily reversible.* The principal questions and answers complained of are preliminary, and could not have prejudiced the rights of the plaintiffs in error. Error in permitting preliminary questions to be propounded to witnesses, is not, necessarily, reversible.

2. ———— *vendor's declaration months after sale not admissible to impeach title transferred.* Declarations made by a vendor several months after he had sold and parted with the possession of property, are not admissible in evidence for the purpose of impeaching the title given by the vendor.

3. SPECIAL FINDINGS — *withdrawing certain, embodied in others already found, not error.* Where a great many special findings of fact are submitted by the court to a jury, the court may withdraw from the consideration of the jury some of such special findings after they have been submitted, where the same findings are embodied in such special findings as have already been found by the jury.

Error from Dickinson District Court. Hon. James Humphrey, Judge. Opinion filed March 22, 1897. *Affirmed.*

*Stambaugh & Hurd*, attorneys for plaintiffs in error.

*C. F. Mead*, attorney for defendant in error.

McELROY, J. This was an action in replevin brought by Lydia A. Wilson, as plaintiff, against James S. Smith, Sheriff, and John Johntz, A. W. Rice, D. R. Gordon, T. H. Malott and W. B. Giles, copartners as Malott & Co., defendants, for the recovery of certain personal property consisting of steers, cattle, hogs, horses and farm implements, and for damages sustained by the plaintiff by reason of defendants' wrongful taking and detention thereof. The property in controversy had been seized by the Sheriff upon an execu-

380     Smith, *Sheriff*, v. Wilson.

N. Dept.     Opinion. McElroy, J.     5 Kan. App.

tion, issued in a case in which said Malott & Co. were plaintiffs and Thomas J. Wilson, the husband of Lydia A. Wilson, was defendant; said property was taken as the property of Thomas J. Wilson. The said Lydia A. Wilson claimed to be the owner, and entitled to the immediate possession, of such property, and commenced this action for possession thereof and for damages for the detention. The answer of the defendants was a general denial. The case was tried upon the petition and answer. The trial was had by the court and a jury. The jury returned a general verdict in favor of the plaintiff and against the defendants for the possession of the property, and assessed her damages at $103.36. Eighteen special findings were submitted at the request of the defendants. A motion for a new trial was denied, and plaintiff in error brings the case here for review.

Complaint is made that the trial court erred in admitting the evidence of Thomas J. Wilson, husband of the plaintiff below, as to matters other than those with respect to which he claimed to be acting as her agent. The principal questions and answers complained of are preliminary questions, and could not have prejudiced the rights of plaintiffs in error. We believe that the court committed no error, upon the whole examination of this witness, in regard to the admission of his testimony.

1. Error in preliminary questions not prejudicial.

Again complaint is made that the trial court erred in refusing to admit evidence, offered by the defendants below to prove admissions of Thomas J. Wilson with respect to his intentions and purposes in transferring his property to the plaintiff, his wife. This was in regard to the transfer, or sale, of property to his wife in August, 1888, and is founded upon the

ruling of the trial court in rejecting the evidence of
Samuel G. Reed as to a conversation had with Thomas
J. Wilson at Kansas City, in the winter of 1888.
During the examination of said witness' defendants
below asked :   '' Now I will ask you if you had a con-
versation there at Kansas City with Wilson about
these Gilliland notes and his indebtedness upon them,
and with respect to a transfer of his property to his
wife? ''   To this question the plaintiff objected, and
the objection was sustained.   This forms the basis of
the complaint in regard to the rejection of evidence
by the trial court.

The steers in question were sold and delivered by
Thomas J. Wilson to his wife, Lydia A. Wilson, in
August, 1888.   Shortly after that time she sold and
delivered them to Reed & Baxter, and Reed & Bax-
ter fed them for several months, and then shipped
them to Kansas City.   Thomas J. Wilson was in
Kansas City in the winter of 1888, at the
time these steers were sold by Reed & Baxter.   The
2. Vendor's    statements which Wilson made, tending
declarations in-   to impeach the title of Mrs. Wilson,
admissible to
impeach title.    were made months after he had parted
with the title and possession of the property, and the
court properly sustained the objection.   Our attention
is called to the case of *Kurtz v. Miller* (26 Kan. 314).
We do not believe that the decision in that case is ap‑
plicable to the case under consideration.   In that case
the court says :

''A further matter of consideration is this : The
court, over the objection of the plaintiff, admitted in
evidence several letters written by her father.   These
letters, written about the time of the sale, were not
directly in reference to it, but written to his various
creditors with explanations of his non-payment and
statement of his plans for the future.   They were

382          SMITH, *Sheriff*, v. WILSON.

N. Dept.          Opinion.   McElroy, J.          5 Kan. App.

admitted, as ruled by the court, for the single pur-
pose of showing the intent with which the vendor
acted in the sale.   For this, they were competent, and
the court committed no error in admitting them.   In
order to vitiate this sale, it was necessary to show
that the vendor made it with a fraudulent intent, and
that fraudulent intent is disclosed by his words as well
as by his deeds."

It will be seen that the grounds upon which the
court admitted in evidence these letters, was that they
were written about the time of the sale — that they
were written so near to the time of the sale that they
were a part of the *res gestæ*.   But, in the case under
consideration, the evidence sought to be introduced
was declarations made by the vendor several months
after he had sold and parted with the possession of the
property.   We do not think these declarations were
competent.   The Supreme Court has said, in the case
of *Scheble v. Jordan* ( 30 Kan. 353) :

"The defendants were permitted to prove the decla-
rations of Mrs. Robinson, made after she had parted
with the title and delivered the possession of the
property, and declarations making against the title
she had attempted to convey.   This is manifestly
error.   In *Summer v. Cook* (12 Kan. 165), we said in
reference to a similar declaration : 'It was ad-
missible only as a declaration by the vendor of
defendants, qualifying his title.   Such a declaration,
to become evidence, must have been made by that
vendor while holding possession.   A declaration
before he received, as well as one after he parted with
his interests, is inadmissible.' "

The fifth, sixth, ninth, eleventh, and twelfth assign-
ments of error are based upon the special findings of
fact as returned by the jury.   In order to understand
fully the errors here complained of, it will be neces-

sary to set out a portion of the findings of fact as returned by the jury, to wit:

"1. Did Thomas J. Wilson transfer, convey and mortgage substantially all of his property both personal and real that was not already mortgaged and that was not exempt by law, to the plaintiff? A. No.

"2. In the year 1888, did Thomas J. Wilson owe the plaintiff a *bona fide* debt? A. Yes.

"3. If you answer interrogatory number two in the affirmative, how much did Thomas J. Wilson owe the plaintiff? A. The fifteen-hundred-dollar and five-hundred-dollar notes and interest from date of same.

"4. What was the value of all the property transferred and conveyed, and the mortgage or mortgages given, by Thomas J. Wilson to the plaintiff, at the time of such transfer, conveyance or mortgage? A. We figure four thousand dollars transferred property.

"5. Did Thomas J. Wilson transfer, convey and mortgage his property to plaintiff, intending to hinder, delay or defraud his creditors? A. No, we think not.

"6. Did plaintiff take a transfer, conveyance and mortgage from Thomas J. Wilson of and upon his property, intending to aid Thomas J. Wilson to hinder, delay or defraud his other creditors? A. No.

"7. Did plaintiff know that Thomas J. Wilson, at the time he transferred, conveyed and mortgaged his property to her, intended by so doing to hinder, delay or defraud his other creditors? A. No, we think not.

"8. Were the circumstances surrounding the parties and the transaction at the time Thomas J. Wilson conveyed, transferred and mortgaged his property to the plaintiff, such as would put a prudent person upon inquiry as to Thomas J. Wilson's good faith in the transaction? A. No, we think not.

"9. What was the value of the cattle and corn transferred by T. J. Wilson to his wife in August, 1888? A. Cattle, two thousand dollars. Bill of sale does not show transfer of corn. Corn not transferred.

"10. At the time T. J. Wilson made the transfer of his property to his wife, was it a part of his object

384    SMITH, *Sheriff*, v. WILSON.

N. Dept.          Opinion.  McElroy, J.          5 Kan. App.

to place his property beyond the reach of the holders of the Gilliland notes? A. We do n't know. We are unable to determine.

"11. If you answer the last question 'Yes,' state whether Lydia A. Wilson, at the time of the transfer, had knowledge of such object on the part of T. J. Wilson. A. We do n't know. We are unable to determine.

"12. Was the auction sale under the Dunlap chattel mortgage made for the purpose of transferring the title to the mortgaged property from T. J. Wilson to his wife? A. No."

Complaint is made that the first, fourth and ninth special findings of fact by the jury are contrary to, and not supported by, the evidence. An examination of the evidence shows that these findings were based upon conflicting evidence, and that the jury had competent evidence upon which to base the same. In regard to the ninth special finding, we do not see how the jury could have answered this question differently. Counsel for plaintiffs in error in their brief say :

"Some time between the twenty-fourth of August and the month of September or October, 1888, that is to say, between the time when the cattle and land were transferred to Lydia A. Wilson by her husband, and the sale to Reed & Baxter, he transferred to her 180 acres of corn worth six dollars an acre, in all $1,080."

Thus the defendants contended in the court below that the sale of corn did not occur in August, 1888, and here they complain that the jury found that the corn was not sold in August, 1888. The jury have found what the defendants in the court below claimed, and we think the jury was correct in the finding.

In regard to the twelfth special finding by the jury, we have examined the record and believe that the same is supported by the evidence in the case.

We now pass to the consideration of the tenth and

SMITH, *Sheriff*, v. WILSON.     385

March 22, 1897.     Opinion.     McElroy, J.     C. Div.

eleventh special findings of fact. These the jury failed
to answer. It will be seen from an examination of these
that No. 11 does not call for an answer unless No. 10 is
answered " Yes." No. 10 having not been answered,
the jury were not requested to answer No. 11. An
examination of the special findings Nos. 5, 6, 7, and 8,
shows that Nos. 10 and 11 had already been answered
by the jury. It will be seen from an examination of
these special findings that Nos. 10 and 11 were fully
answered therein ; and it was, therefore,
proper and right that the court should
withdraw from the consideration of the
jury Nos. 10 and 11, and a failure to require the jury
to answer them amounted simply to the court's with-
drawal of them from the consideration of the jury.
This, we think, was proper and right for the court to
do. In the case of the *City of Wyandotte v. Gibson,
Adm'x,* ( 25 Kan. 243 ), our Supreme Court says upon
this question :

3. Special find-
ings withdrawn,
not error
when.

" We pass to the final matter ; and it is the only
one that has given us any real trouble. Several
questions were submitted to the jury. Beside the
general verdict, they answered many of those ques-
tions, but some they failed to answer. Nevertheless
the court, over the objections of defendant, received
the verdict and the answers returned without insisting
upon answers to the questions not answered. Now
that a party has a right to have specific questions
submitted and answered, has been repeatedly affirmed.
*Bent v. Philbrick,* 16 Kan. 190 ; *Morrow v. Commr's of
Saline Co.,* 21 id. 484 ; *L. L. & G. Rld. Co. v. Rice,*
10 id. 426. But this right is not one which enables
him to determine what are material facts, and what
questions must be answered. He may present any
number of questions for submission, as any number of
instructions, but it is the duty of the court to deter-
mine what in the one case shall be submitted, as in

the other what shall be given. And the court by declining to compel the answer to any specific questions, in effect withdraws them from the jury. And this the court may do, if in so doing no material question is deprived of a specific answer. Sometimes the answer to one question renders unnecessary and improper any answer to another."

Under this authority we feel confident that the court committed no error in refusing to compel the jury to answer numbers ten and eleven. It therefore follows that the trial court committed no error in overruling the motion for a new trial.

We have examined the record and evidence very carefully and are satisfied that the trial court committed no reversible error. The judgment will be affirmed.

Wells, J., concurring.

Mahan, J., having been of counsel, not sitting.