THE WINFIELD NATIONAL BANK AND J. W. SKINNER v. ITHAMAR JOHNSON.

### No. 497.

1. CASE-MADE—*Certificate.*  Under the decision in *Donnell v. Reese,* 6 Kan. App. 563, 51 Pac. 584, the case-made herein is held sufficient.
2. FRAUDULENT CONVEYANCE—*Instructions.*  Under the facts stated in the opinion, the instructions given to the jury did not cover the issues presented by the pleadings and the evidence.

Error from Cowley district court; A. M. JACKSON, judge.    Opinion filed July 10, 1899.    Reversed.

*McDermott & Johnson*, for plaintiffs in error.
*Pollock & Lafferty*, for defendant in error.

The opinion of the court was delivered by

MILTON, J. : A preliminary question is presented by the defendant in error, who contends that the case-made contains no certificate as to its contents, and is therefore not reviewable.    We find a certificate, sufficient in form and substance and signed by the attorneys for the plaintiffs in error, immediately following the journal entry of final judgment in the case, and

immediately preceding an acknowledgment of service of the case-made by the attorney for the plaintiff below, which is itself followed by a certificate of the trial judge in settlement of the case-made.   Such facts bring the case within our decision in the case of *Donnell v. Reese*, 6 Kan. App. 563, 51 Pac. 584, and accordingly the objection is untenable.

This action was brought on November 24, 1894, by the defendant in error to recover damages for the alleged unlawful conversion by the plaintiffs in error of 900 bushels of wheat, the property of the defendant in error, and of the value of fifty cents per bushel.   Other claims for incidental damages were alleged, including a claim for an attorney's fee, but such additional claims were eliminated from the case before its final submission to the jury.   The answer, among other things, averred that one Lyman Johnson, the real owner of the land on which the wheat in controversy was grown and of the wheat, for the purpose of hindering, delaying and defrauding his creditors, and especially the defendant bank, had conveyed the said land, without consideration, to the plaintiff, who knowingly and fraudulently participated in the transaction. The reply alleged that the conveyance by Lyman Johnson to the plaintiff of the said land was made in good faith and for valuable consideration.

The evidence shows that on September 30, 1893, Lyman Johnson, being the owner of two quarter-sections of land in Cowley county, deeded one tract, his homestead, to Martha J. Lassiter, in consideration of the assumption of the mortgage against the same, and the other tract, which was worth about $3500, to his brother, Ithamar Johnson, subject to a mortgage of $2025, in consideration of indebtedness due the latter, partly for labor performed, but principally for money

loaned at various times during a period of more than ten years, under a loose general agreement for repayment when practicable.   Both were deeds of warranty, and that to Ithamar was executed in pursuance of an oral agreement made a few days before the date of the conveyance.   As a result of such conveyances Lyman Johnson was insolvent, and at that time he was indebted to the Winfield National Bank in the sum of $2815.06.   For that indebtedness he had, on the 4th of the preceding August, given his promissory note due in sixty days from that date, and secured by a chattel mortgage which covered 1700 bushels of wheat then stored in granaries on the farms and other property.   The bank afterward sold the mortgaged wheat, applying the proceeds thereof on the said indebtedness, and in 1894, in an action on the note for the balance due, obtained judgment against Lyman Johnson for $1744.45.   In June, 1894, J. W. Skinner, as sheriff of Cowley county, had been appointed receiver in the action on the note, and was ordered to receive the wheat crop then maturing from the tenants who were farming the land conveyed to Ithamar Johnson, which wheat was sown in the fall of 1893, partly before and partly after the conveyance.   The sheriff subsequently received the wheat and placed the same in granaries.   Thereafter an execution was issued on said judgment and the sheriff levied the same on the wheat in his hands as receiver.   On October 24, 1894, the wheat so levied on was sold to the bank, after which the sheriff had no connection with the matter except to make return of the execution.   The case was tried to a jury, which returned a verdict in favor of the plaintiff in the sum of $315.

Plaintiffs in error allege that the court erred in the admission of certain evidence and in its instruction to

Bank v. Johnson.

the jury.   The evidence alleged to have been im-
properly admitted consisted largely of letters written
by Lyman Johnson to Ithamar Johnson during a
period of more than ten years prior to the date of the
conveyance to the latter, either asking for loans of
money or acknowledging the receipt of money re-
mitted.   A few letters from Ithamar to Lyman were
also admitted in evidence.   As it appears from the
record independently of these letters that Ithamar
Johnson did actually advance money at various times
to his brother Lyman, and in the aggregate between
$1000 and $2000, and as counsel for plaintiffs in error
in their brief admit that, "under the evidence there
can be no question that Lyman Johnson owed the
plaintiff and deeded him the land," we think that,
while the letters written by Ithamar Johnson should
not have been received in evidence, the error in their
admission was immaterial.   The letters from Lyman
Johnson were properly admitted, as he was not a
party to the present action.   They were parts of the
continuing transaction whereby the indebtedness was
created.

Turning now to the instructions, we find that none
was asked by the defendants below.   We have read
the entire charge with great care, to determine
whether, as a whole, it was broad enough to cover
the essential issues in the case, namely, Did Lyman
Johnson deed away his land with the intent to defeat
the Winfield National Bank in the collection of its
claim against him? and, if so, was Ithamar Johnson
aware of such intention?   In one instruction it was
stated that a person, though insolvent and in failing
circumstances, may convey his property to whomso-
ever he pleases, if the transaction be an honest one,
and that, if the conveyance be made in good faith and,

for an adequate consideration, it matters not how many creditors may be prevented thereby from reaching the property. The instruction most favorable to the theory of defendants below is as follows :

" You will observe the vital question that you are to determine in this case is as to whether or not there was a *bona fide* indebtedness from Lyman Johnson to the plaintiff, and as to whether or not Lyman Johnson honestly and in good faith was indebted to this plaintiff, and whether or not this plaintiff honestly and in good faith accepted a conveyance of the title to the real estate for the honest purpose of securing his debt, and as to whether or not the value of the real estate was greatly in excess of the debt due from Lyman Johnson to the plaintiff ; and if you find that Lyman Johnson was honestly indebted to the plaintiff, and the plaintiff honestly and in good faith accepted the title to the real estate in payment of his debt, and that the value of the real estate sustained a fair proportion to the amount of the debt, then, in that event, this plaintiff would have had a right to accept said real estate and no creditor would have any cause to complain by reason of that fact. But, upon the other hand, if this was not a just debt, or if the value of the real estate was greatly in excess of any just debt due from Lyman Johnson to the plaintiff, then the law would not permit this plaintiff to take the property of Lyman Johnson and withhold the same from his creditors."

It was not stated unqualifiedly anywhere in any of the instructions that if the conveyance from Lyman Johnson to Ithamar Johnson was made for the purpose of hindering, delaying and defrauding the creditors of Lyman Johnson, and if Ithamar Johnson purchased the property with knowledge of such intention on the part of his grantor, then the conveyance would be void. (*Haskett v. Auhl*, 3 Kan. App. 748, 45 Pac. 608.) The instructions did not cover

the issues presented by the pleadings and the evidence, and certain paragraphs were, we think, misleading. The jury were not sufficiently guided by the court in respect to a matter vital to the interests of the defendants below.   All the issues in the case are for a jury and it appears just that the case should be tried again.   The judgment of the district court will be reversed and the cause remanded for a new trial.