57  195!
67  224

THE MISSOURI PACIFIC RAILWAY COMPANY v. EFFIE C. LOVELACE.

No. 8720.

1. MEDICAL EXPERT—*Opinion of past mental condition based on present physical examination alone, inadmissible.*  The opinion of a medical witness as to the mental condition of a person at a certain time, based only upon a physical examination made 18 months afterward, where such witness is not informed as to the mental condition at the time when the mental capacity was in question, is largely conjectural and is too uncertain and speculative to be valuable or admissible.

2. RECEIPT—*Mere negligence in signing, does not preclude denial or explanation of contents.*  Ordinarily, the mere negligence of a person in signing a receipt without reading the same will not conclude such person nor prevent explanation or denial of what it contains, and especially so if it appears that such person was induced to sign the paper by the misrepresentation or fraud of the other party.

3. RELEASE OF DAMAGES—*Fraud in obtaining, evidence examined.*  One who was injured by the derailment of a train brought an action to recover damages.  The main defense of the Railway

Company was that there had been a compromise and adjustment of the claim and the injured person had by the execution of two separate papers released the Company from liability.   In reply the plaintiff alleged that she was mentally incapacitated for business when the first paper was signed, and that she was induced to sign the second paper by the misrepresentation and fraud of the Company.   The testimony taken on the trial examined, and it is *held* that the refusal of the Court to charge the jury that no recovery could be had by the plaintiff was not error; but further *held* that the finding of the jury, that the signature of the plaintiff to the second paper was obtained through false and fraudulent representations of the attorney of the Company for the purpose of cheating and defrauding her, is not supported by the testimony.

4. NEW TRIAL—*For newly discovered evidence, proof of previously unknown statements of prevailing party, sufficient cause for.*   Newly discovered testimony, consisting largely of statements of the prevailing party to third persons, made the basis of a motion for a new trial, examined, and *held* to be competent and material; and, it being shown that the other party had no knowledge of the same until after the trial, and only discovered it from clues developed at the trial, and also that the testimony probably could be produced at another trial, it is further *held* that sufficient cause for a new trial was shown.

*Error from Johnson District Court.*

*Hon. John T. Burris, Judge.*

REVERSED AND REMANDED.          OPINION FILED JULY 11, 1896.

*Waggener, Horton & Orr*, for plaintiff in error.

*Sherry & Hughes*, and *S. T. Seaton*, for defendant in error.

JOHNSTON, J.   A passenger train of the Missouri Pacific Railway Company, running through the State of Missouri, was derailed June 28, 1890, and, as a result, Effie C. Lovelace, who was a passenger thereon, received some injuries.   She came at once to her home in Kansas City, Mo., and, July 1, 1890, after some negotiations, signed a paper in which it was stipulated that, for a consideration of $100, she re-

leased the Company from all claims on account of her injuries. Her husband, who assisted in the negotiations, also joined her in signing the paper. In January, 1891, she was a witness in behalf of the Railway Company in a case on trial in Missouri; and it is claimed that when her witness fees were paid, sufficient money was added on account of the injuries previously received to make the amount $20. She then signed a release or receipt, of which the following is a copy :

"KANSAS CITY, January 16, 1891.

"In consideration of the sum of twenty dollars to me paid by the Mo. Pac. Ry. Co., I hereby assign to said Co., my fees in the case of Emma Tyler v. said Co., which amount to $6.25 ; and also release to said Co. any and all claims I have against it for injuries received by me in accident which occurred on June 28, 1890.      MRS. EFFIE C. LOVELACE.

Attest : H. C. McDOUGAL."

For the same consideration, and on the same day, her husband executed a paper releasing the Company from any and all claims he might have against the Company on account of injuries to his wife caused by the accident above mentioned.

July 23, 1891, she came into Kansas and instituted an action in the District Court of Johnson County against the Company, alleging that the derailment and injury were caused by the negligence of the Company, and that, in consequence of the negligence, she had sustained injuries in the sum of $10,000. In its answer, the Railway Company denied negligence, averred that the claim for the injury had been compromised and adjusted, and set forth the releases heretofore mentioned. In reply to the answer the plaintiff below alleged that the release of July 1, 1890, was obtained while she was suffering great bodily

pain and mental anguish, and when she was wholly incapacitated for the transaction of any business ; and, further, that her signature thereto was obtained for the purpose of cheating and defrauding her. In regard to the release or receipt dated January 16, 1891, she alleged that Elijah Robinson, the attorney of the Company, represented to her that the release was simply a receipt for witness fees in the case of Tyler *versus* the Railway Company, and that, relying upon his representation, she signed the release, believing it was simply a receipt for such witness fees. The trial resulted in her favor, the jury awarding her damages in the sum of $4,500.

It is claimed that error was committed by the trial court in the admission of what is termed expert testi-

1. Expert's opinion of past mental condition based on present physical examination inadmissible.

mony. Doctor Lemon was called as an expert, and stated that he had never met the plaintiff until the day before the trial, when he made an examination of her physical condition and discovered that she was suffering from womb and uterine troubles. Among others, the following questions were asked :

" Doctor, what would you say from the condition in which you found plaintiff at the time you examined her, if the injuries resulted from a railway accident on the 28th of June, 1890, as to what her condition of mind would naturally be on the first day of July, following? "

Over objections he gave the following answer :

" I can only give an opinion in a general way. The majority of cases in that condition, at so short a time after the injury, with an injury of that character, would be in that condition of mind which we recognize as hysteria, and physicians would consider a patient —— "

Here  counsel  interrupted  and  objected  to  what
physicians would consider, when the Court remarked
to the witness :

" What do *you* consider? "

The witness then gave this further answer :

" My own opinion would be that any lady suffering
with  hysteria  would  be  unfit  for  the  transaction of
business."

A motion to strike out the answer was refused.   He
was then asked to give his definition of hysteria, and
replied as follows :

"Hysteria  is  that  effect  upon  the  nervous system
which  produces,  by  reflex  action,  an  effect  upon the
brain  of  vacillation,  hallucination  and  imaginations
of different characters, and is the result of irritation
of  the  uterine  walls.    There  is  such  a  thing as hys-
teria without uterine disease."

This testimony was clearly objectionable and preju-
dicial.    One  of  the  principal  contentions in  the  case
related to the mental condition of the plaintiff at the
time the release was signed, July 1, 1890.   She claimed
that, by reason of  the pain  she was  suffering and of
the medicine administered to alleviate it, she was in-
capacitated to transact business, and had no recollec-
tion of  having signed the paper nor of  anything that
occurred  on  that day.    A great deal  of  evidence was
introduced  to  the  effect  that  she  was  conscious and
composed, and was then in the full  enjoyment of  her
mental powers.    Doctor Lemon  had  not  seen  Mrs.
Lovelace at  the  time  the  release was  signed, nor for
more than 18 months afterward.   It  was competent
for him to testify in regard to her condition when the
examination was made and  to  give his  opinion, if
such testimony was necessary, whether her condition
at that time and the pain she was suffering, were the

result of the injuries received when the train was de-railed. The opinion of witnesses competent to speak might have been likewise taken as to the permanency of the injury. The witness was not informed as to the condition of Mrs. Lovelace at the time when her capacity was in question; his testimony was not based on that given by others acquainted with her then physical or mental condition; nor were the facts relating to her condition and as to what she said and did at the time, laid before the witness as a foundation for opinion testimony. The opinion of the witness as to her condition of mind at one time based upon her physical condition a year and a half afterward is largely conjecture and is too uncertain and speculative to be of value. The opinion asked for was based upon conditions altogether too remote; and the answer given by the witness shows that the opinion is only a double speculation. He stated that persons so injured might have hysteria, and "that any lady suffering from hysteria would be unfit for the transaction of business." Although a number of witnesses testified in regard to her condition and conduct at that time, we find no testimony in the record indicating that she had hysteria or was suffering from anything approximating it. Opinion evidence is only admitted from necessity, and, then, only when it is likely to be of some value. In the present case there was no necessity for extending the scope of such proof, as there was no difficulty in obtaining testimony as to her condition and as to what was said and done by her at that time, so that the jury could readily determine for themselves what her mental capacity was when the compromise was made and the release signed. We think prejudicial error was committed in admitting the testimony.

On behalf of the Railway Company it is claimed. that there was no proof of mental incapacity when the release of July 1, 1890, was signed, and that, having signed the receipt dated January 16, 1891, when she had the capacity and opportunity to read it, if she did not do so, she is concluded, and, therefore, the Court erred in refusing to instruct the jury that no recovery could be had. There is some testimony tending to show that she was incapacitated to make a contract at the time the release was signed; and, if that is found to be true, the execution of the release and the apparent consent to the contract are not binding upon her. In a somewhat similar case, it was held that, where a party executed such a paper when he was under the influence of drugs and opiates taken to alleviate pain, so that no sufficient assent was given to the release, he was not bound thereby; and it was also held that it was unnecessary for him as a condition precedent to his right to sue for damages, to pay back, or offer to pay back, money received at the time of signing the paper. *Railroad Co. v. Doyle*, 18 Kan. 58.

The receipt signed in 1891 purports to be an acknowledgment of the payment of witness fees as well as a payment upon any claim for the injuries received at the railroad accident. She

2. A receipt is only prima facie evidence of its contents.

claimed that the Company had paid other witnesses in the same case more than the statutory fees, and that it was her idea that the whole $20 was paid to her as witness fees. She further stated that the paper was designated a receipt when it was placed before her to sign, and that no mention was made of her claim for damages at that time. A receipt is only *prima facie* evidence of the statements which it contains, and is open to

explanation by the party giving it, even to the extent of showing that it was given by mistake and that the statements which it contains are in whole or in part untrue. *Ellicott, Assignee, v. Barnes*, 31 Kan. 170; *Clark v. Marbourg*, 33 id. 471; *Solomon Rld. Co. v. Jones*, 34 id. 443. This is not a case in which the interests of any innocent third party are involved, but the controversy being still between the original parties to the transaction, the question of the negligence of one of them is not of great importance. We are unwilling to decide that her mere negligence in signing a receipt without reading it concludes her and prevents all explanation or denial of what it contains; and certainly such a view should not be taken if it turned out that she was induced to sign it by the misrepresentation or fraud of the Company. We, therefore, conclude that the Court committed no error in refusing to instruct the jury to return a verdict in favor of the Company.

There is cause, however, to complain of the finding of the jury that the signature of Mrs. Lovelace to the paper of January 16, 1891, was obtained through the false and fraudulent representations of Robinson for the purpose of cheating and defrauding her. Robinson was an attorney of the Company, and the paper was prepared in his office and in her presence. She stated that, after it was prepared, she had ample opportunity to read it, and that she could read ordinary writing. Her testimony is that he left it on the table in front of her with the remark — "Sign this receipt!" There was no attempt to conceal the contents of the paper in any way, and she did not claim or testify that Robinson made any statement of its contents; nor does it appear that she was hurried into signing it. If her testimony is taken as true, it

affords no support for the finding that her signature was obtained through false and fraudulent representations.

Another assignment of error is the overruling of a motion for a new trial, based upon the ground of newly-discovered evidence. The attorney of the Company who had charge of the preparation and trial of the cause subsequently discovered testimony of a very material character which might bring about a different result if a new trial were had. It includes the testimony of those who saw and talked with Mrs. Lovelace on July 1, 1890, when the release was given, and subsequent to that time. She had testified that she was confined to her bed for three weeks as a result of her injuries; that her mind was greatly disturbed, and that she was practically unconscious of what was transpiring about her. According to the affidavits, one of the witnesses will testify that she talked with Mrs. Lovelace after the settlement had been made and the release signed; that she was in excellent spirits and in good mental condition; that she understood and comprehended everything that transpired about her, and remarked that she felt well paid for the injuries she had received. Immediately after the settlement had been made she got out of bed, dressed herself, and afterward went with her husband to their boardinghouse, which was some distance away. Three days later she attended a picnic at one of the parks and appeared to be in good physical condition. Another witness met her on the day following the settlement, and was informed by Mrs. Lovelace that she had sustained some bruises from the wreck, but that they were not serious, and apparently they caused her no trouble. Other testimony of a similar character,

3. Newly-discovered evidence.

which tends strongly to show that Mrs. Lovelace's mental condition was good at the time in question, is referred to in the affidavits.

The principal objection is that there was not a sufficient showing of diligence on the part of the Company to obtain the testimony. Great diligence was not shown, but, in view of the fact that the newly-discovered evidence consists largely of statements made to third persons and of conduct in their presence, it may be deemed sufficient. It may be that those in charge of the case for the Railway Company had no reason to suspect that such statements and acts had occurred or were available as testimony, and the attorney of the Company swears that he had no knowledge of such matters or facts or of the witnesses until after the trial of the cause, but that facts were developed on the trial and on the cross-examination of the plaintiff which gave a clew to the new facts that have since been discovered and are contained in the affidavits. In view of the great materiality of the evidence, and the fact that the case was instituted and tried in a State other than where the accident occurred and where the plaintiff below resided, we think a sufficient showing was made, and that a new trial should have been granted.

The judgment of the District Court will be reversed, and the cause remanded for a new trial.

ALLEN, J., concurring.

MARTIN, C. J., having been of counsel, did not sit.