No. 30,829.

W. H. STANLEY and J. W. McOSCAR, *Appellants*, v. H. H. BLAIR and THE TEXAS COMPANY, *Appellees*.

(21 P. 2d 311.)

Opinion filed May 6, 1933.

*C. L. Kagey, Hal M. Black* and *L. M. Kagey*, all of Wichita, for the appellants.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester M. Morris, Charles B. Hudson* and *Clyde M. Hudson*, all of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought first in the city court of Wichita, by W. H. Stanley and J. W. McOscar against H. H. Blair and The Texas Company, to recover $800 alleged to have been advanced by plaintiffs to landowners as rentals on oil and gas

leases which plaintiffs allege were sold to and agreed to be paid for by Blair, when the purchase of the leases was made by him, and it is claimed that The Texas Company became liable therefor when the lands were subsequently sold by Blair to The Texas Company. In the city court a demurrer was sustained as to The Texas Company, and judgment was rendered against Blair for $800. An appeal was then taken to the district court where a trial was had, and the case was determined on a demurrer to plaintiffs' evidence. W. H. Stanley, it appeared, procured leases from the individual owners of four different tracts of land and placed them in escrow in a bank to be delivered when certain rentals were paid to the landowners. Plaintiffs alleged and testified that the rentals were advanced by Stanley, and that when Blair purchased the leases from Stanley it was agreed that payment for the rentals should be made by him. After the introduction of plaintiffs' evidence, defendants filed a demurrer thereto on the ground that the evidence failed to establish a cause of action against defendants. The court sustained the demurrer, and from that ruling this appeal is taken.

In the sale of the leases to Blair, the negotiations were carried on by Stanley with Blair, but it appears that J. W. McOscar had acquired a half interest with Stanley in the leases, and hence he was named as a plaintiff and is one of the appellants.

Negotiations were had for the sale of the leases in March, 1930. Blair was at Hugoton, near which the leased lands are situated, and Stanley resided in Wichita. Some negotiations were had over the telephone as to the leases, and on the following day Stanley went to Hugoton where they came to an agreement to sell the leases for $2.50 an acre, which was reduced to writing in the following terms:

"PURCHASE AGREEMENT. The undersigned, W. H. Stanley, agrees to deliver to H. H. Blair, on or before the —— day of ——, 1930, valid oil and gas leases and assignments thereof to H. H. Blair, covering the following described acreage in Stevens county, Kansas, to wit: southwest quarter (SW¼) of section 6-34-35W, at $2.50; southwest quarter (SW¼) of section 18-34-35W, at $2.50; south half (S½) of section 11-34-36W, at $2.50; northeast quarter (NE¼) of section 17-35-35W, at $2.50. And it is hereby understood and agreed that certificates of title, statements of status of loans, and all other requirements necessary to complete title, are to be furnished with oil and gas leases and assignments, payment to be made upon approval of title by H. H. Blair. Providing W. H. Stanley can get leases out of banks which said banks are holding leases in escrow. (Signed) W. H. STANLEY.

Accepted (Signed): H. H. BLAIR,
V. KISTLER."

Notwithstanding the written contract, plaintiffs offered testimony to the effect that in addition to the $2.50 an acre expressed in the agreement, there were statements by Blair that he was to pay rentals on the leases to the farmers for a year, amounting to $800, and further that The Texas Company had, by virtue of statements made by Blair, become liable to plaintiffs for rentals advanced by Stanley. It appears Blair had subsequently sold the leases to The Texas Company at a profit of twenty-five cents an acre. The testimony, however, fails to show that The Texas Company was a party to the contract between Blair and the plaintiffs or that it had assumed any obligation on the payment of rentals. It also failed to show that Blair was the agent of The Texas Company or was authorized to represent that company in the transaction. There was testimony that plaintiffs desired to have The Texas Company agree to make the payments, but it is clear that it did not nor did it in any way assume the payment of the rentals. There can be no question that the court rightly sustained the demurrer as to The Texas Company.

As to Blair there was some testimony to the effect that statements made by him subsequent to the contract might be interpreted as expressing a purpose to pay for the rentals but, as to that, it may be said there was no consideration therefor.

Plaintiffs also alleged in their petition that in order to get the leases out of escrow, it was agreed between the parties that plaintiffs should pay the rentals, and defendants would pay them or the property would be reassigned to plaintiffs. Whatever may have been said by the parties in the negotiations for the sale, the contract was put in writing and, it being definite and complete, parties cannot add to, alter or vary the terms of that instrument. The contract quoted was reasonably clear and complete. The terms as to the property sold and the consideration to be paid for it were contractual in their nature and are conclusive upon the parties. There was no attempt to reform the contract, nor was there any charge of fraud or mutual mistake in making the written contract. The attempt to show or recover a greater consideration was without force, in that it necessarily operated to vary the terms of the written agreement, and justified the court in sustaining the demurrer to plaintiffs' evidence. The negotiations over the telephone were followed by the making of the written contract in which the parties embodied the conditions of the transaction. In a contract for the sale of property

the price to be paid is an essential feature of it, and where that is expressed in writing it is conclusively presumed that it contains the whole terms of the contract. In *Threshing Machine Co. v. Francisco,* 106 Kan. 704, 189 Pac. 981, in which a written contract for the sale of a threshing machine was involved, a defense was set up of an added oral warranty contemporaneously made, and of that and the necessity for a consideration to uphold the added provision, the court said:

"The pleaded oral contract of warranty, if made at the time the engine was ordered and purchased, was not good for the reason that it tended to vary the terms of the written contract. If the oral contract was made after the written order had been signed and after the engine had been purchased, it was not good because there was no consideration therefor, either pleaded or proved. (Citing cases.) Neither could the pleaded oral contract and agreement made at the time of the writing, dated November 9, 1915, be admitted to add to, alter, or vary the terms of that instrument." (p. 709.)

In *Hazelton v. Chaffin,* 109 Kan. 175, 197 Pac. 870, it was said:

"Here the defense was a parol agreement at variance with the written contract. Such a defense is never permitted unless some species of fraud or mutual mistake is also pleaded and proved. Where there is neither plea nor proof of fraud or mutual mistake, it is conclusively presumed that the written contract contains the whole terms and the only terms of the contract; and a person who has thus obligated himself cannot defeat a recovery on such contract by parol evidence of matters at variance therewith. Were the rule otherwise the making of a written contract would be a vain and useless undertaking. This has always been the law in this state." (p. 177.)

If there were any subsequent oral agreements by Blair as to the price to be paid for the leases, to uphold them it would be necessary to prove a consideration, and it is clear that no consideration was to be paid for the claimed agreements. In *Tong v. McArthur,* 121 Kan. 870, 250 Pac. 262, there was a sale of a barber shop, and the writing recited a specific consideration. It was claimed that the parties also had an oral contract to the effect that the defendant should not engage in business as a barber in the vicinity for a specified time. In holding that the alleged contract could not be proven, the court said, among other things:

"The writing between the parties, admitted at the opening statement to have been executed by defendant and received by plaintiff, says the entire consideration was given for the property sold as described in the writing. In the face of this writing it is not competent for plaintiff to show that this consideration also included compensation for ancillary parol agreements." (p. 872.)

The judgment for defendants is affirmed.