No. 34,027

John G. Loflin et al., *Appellees*, v. Alfred W. Ault et al., *Appellants.*

(87 P. 2d 524)

Opinion filed March 4, 1939.

*Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr., Verne M. Laing, G. K. Purvis, Jr.,* all of Wichita, and *W. R. Griffin,* of Ellis, for the appellants.
*E. C. Flood* and *Clayton S. Flood,* both of Hays, for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action to quiet title to real estate, and from a judgment in favor of plaintiff the defendants appeal, the questions here presented all depending on whether an oil and gas lease, by reason of concurrent and supplemental contracts for its delivery and performance, was longer in effect.

Plaintiff owned 800 acres of land, and he and other landowners executed oil and gas leases to defendant Ault. The lease executed

by plaintiff was dated March 5, 1935, was of usual form, and provided that if no well be commenced on or before March 5, 1936, it should be void, unless on or before that date Ault should deposit in a named bank to lessor's credit the sum of $800, which should operate as rental and cover the privilege of deferring commencement of a well twelve months from that date, and for successive further payments, etc. Under a written agreement concurrently executed, these leases were deposited in escrow for delivery, the conditions covering right to examine titles to the real estate, and after approval thereof and upon payment of $1,680 (which seems to have been one dollar per acre) the leases were to be delivered. The agreement further provided:

"Second, a further consideration for said oil and gas leases, the lessee agrees to drill a well for oil and gas on the above-described properties and to commence operations for the drilling of same within sixty days (60) from the time said leases have been paid for, as above provided.

"Lessee agrees to complete said well within twelve months (12) after commencement of operations. Further lessee agrees to furnish said lessors or their agent, Frank J. Dite, a log of said well, as same is being drilled.

"If, however, said lessee or his assigns shall fail to commence operations for the drilling of said well within the time, as herein provided, said leases and this agreement shall be null and void and all rights and all obligations and liabilities hereunder shall forthwith cease, determine and be forever at an end as to all parties."

Under this agreement lessee caused the titles to be examined. It was necessary to quiet title to plaintiff's lands, and the payment of $1,680 was not made until about October 25, 1935. The leases were delivered to Ault and duly recorded. The escrow agreement was not recorded. By reason of the delay and as result of negotiations, a second contract was made, dated December —, 1935, which made reference to the previous agreement, and provided:

"Whereas said agreement specifies that lessee shall drill a well for oil and gas on the real estate described therein, and drilling operations shall commence on or before sixty days from the time the leases on said real estate have been paid for; that said time for the commencement of a well as specified in said contract will expire on or about the 25th day of December, 1935, and said lessee is desirous of obtaining as [an] extension of time in which to commence drilling operations.

"Now, therefore, in consideration of the sum of $1 and other good and valuable considerations, the receipt of which is acknowledged, the said lessors do hereby agree that said escrow agreement of oil and gas leases shall be amended and supplemented and that the lessee, Alfred W. Ault, shall be given until March 1, 1936, in which time to start drilling operations

on a well, for oil and/or gas upon the real estate described in said escrow agreement.

"That in all other particulars the original escrow agreement of oil and gas leases shall be and remain in full force and effect."

This agreement was not recorded. There was no dispute as to the execution of the above leases and contracts. Early in March, 1936, the lessee located a site for a well on plaintiff's lands and caused a cellar to be dug. Nothing further was done there. In July, 1936, defendant Ault assigned the lease to defendant Modier, the assignment being recorded. Thereafter and in March, 1937, a well was located on land of another of the lessors and a cellar was dug, but nothing further was done. In June of 1937 plaintiff filed his action to quiet title, setting up the chain of circumstances above detailed and other matters involved therewith, alleging the lease to be void and praying that his title be quieted.

Summarized, the answer of defendant Ault was that after the execution of the agreement of December —, 1935, and in March, 1936, he had paid the delay rentals under the lease and for the express purpose of extending the term from March 5, 1936, to March 5, 1937; that when the payment was made plaintiff knew Ault would not be able to commence a well by March, 1936, and in accepting the payment waived the provisions of the agreement of December, 1935, and thereafter Ault had the option of drilling a well or paying the rental. Attached to the answer was a copy of receipt of the payment mentioned, to which reference is hereafter made. He further alleged defendant made no objection to his failure to commence a well by March 1, 1936; that he had assigned the lease to defendant Modier for a valuable consideration, and at the time he had received no notice of forfeiture nor had any objection been made to his failure to drill. He also alleged that Modier had caused delay rentals for 1937 to be paid the bank as provided in the lease. Other allegations will be referred to later in our consideration hereof.

The rental receipt mentioned is in form of an affidavit, and after making reference to the lease and provision for payment of delay rentals for a period of twelve months from March 5, 1936, states:

"Affiants further depose, acknowledge and state that all of said delay rentals have been paid up to, and including, the 5th day of March, 1937, and that said lease is now valid and in full force and effect."

The answer of defendant Modier alleged he was assignee of the lease; that plaintiff had accepted delay rentals without objection

and was estopped to forfeit the lease; that he had caused delay rentals to be deposited in the bank prior to March 5, 1937, and same still remained in that bank to plaintiff's credit; and that he had not been served with notice of forfeiture, and plaintiffs at no time prior to March 5, 1937, indicated an unwillingness to accept said rentals, and that the bank was plaintiff's agent.

Plaintiffs' reply admitted the execution of the receipt but denied the $800 was paid to them for the purpose of extending the lease or for the purpose of deferring commencement of a well, or that the payment was independent of the supplemental agreement, but alleged that the payment was made as part of the consideration for the supplemental agreement and that the receipt was for the purpose of acknowledging that payment and for no other purpose.

At the trial, evidence was received tending to prove the allegations of the pleadings of the respective parties, and at their request the trial court made findings of fact and conclusions of law, which will be referred to as necessary, and rendered judgment for plaintiff. Defendants' motion to modify the findings of fact was allowed to correct some erroneous dates therein, but it generally, and other posttrial motions fully, were denied, following which the defendants appealed to this court.

Before discussing the findings of fact, it may be noted there is no claim by the appellants that the location of the sites for the two wells and the digging of the cellars, without further operations, were sufficient under the lease and escrow agreements. Their contention in substance is that appellee accepted delay rentals payable March 5, 1936, and thereby waived the provisions of the agreement of December —, 1935, which called for drilling of a well by March 1, 1936, and that the failure of the appellee to declare a forfeiture until after delay rentals were paid to the depository bank in March, 1937, was also a waiver, and that the retention of the rentals paid was an election to treat the leases as valid. Appellant Modier further contends that he was an assignee of the lease for value and without notice of any defects in his assignor's title.

The appellee, in substance, contends that the payment of March, 1936, was not for the purpose of extending the lease, but was a part of the consideration for the supplemental agreement of December —, 1935, and that appellant Modier was not an assignee in good faith.

The correctness of either contention depends on the facts as found by the trial court, and they may be summarized and quoted as fol-

lows: The plaintiff was the owner of certain real estate here involved, and with the owners of other lands executed the oil and gas leases and the escrow agreement of even date therewith. Abstracts of title were furnished and examined and title to plaintiff's land was quieted. About October 25, 1935, the sum of $1,680 was paid by Ault and the leases delivered to his attorneys and subsequently recorded, and since then have been in the possession of those attorneys. In December, 1935, and shortly before expiration of the sixty-day period fixed in the original escrow agreement, Ault met with the landowners and stated that by reason of delay because titles had to be quieted, he was not able to commence drilling a well, and requested an extension of time.

Findings 5-A, 6 and 6-A are as follows:

"5-A. Mr. Ault stated, and orally promised to the landowners present at this meeting in Mr. Wagner's office, above referred to, that if said landowners would grant him an extension until March 1, 1936, in which to commence drilling operations for the well in question, that he would, within said time (by March 1, 1936) commence said drilling operations, and also pay all of the landowners in the block the $1 per acre cash rental, which would become due on March 5, 1936, under the terms of the leases, and go ahead and complete the well.

"6. After these oral discussions were had the supplemental agreement was prepared by Mr. Wagner and signatures of the various landowners obtained. The supplemental agreement was made a part of the petition as exhibit 'C' [agreement of December —, 1935]. This agreement referred to and made a part thereof, the escrow agreement referred to in finding No. 2 [escrow agreement of March 5, 1935]. It further provided, that whereas the time for the commencement of a well as specified in said original agreement would expire on December 25, 1935, and the lessee desired an extension of time to commence drilling operations, it is agreed, in consideration of $1 and other good and valuable consideration, that said escrow agreement be amended and supplemented and that the lessee, Alfred W. Ault, shall be given until March 1, 1936, in which to start drilling operations as therein provided, and in all other particulars the original escrow agreement should be and remain in full force and effect. Neither the escrow agreement nor the supplemental agreement was filed for record.

"6-A. None of the landowners were paid the $1 cash consideration recited in said supplemental agreement, nor did the plaintiffs, nor any of the other landowners, receive any consideration for the execution of said supplemental agreement, or the extension of time to commence drilling operations provided therein, except said oral promise on the part of the defendant Ault that if the landowners would grant him such extension he would, within the extended period, pay each of them the $1 per acre cash rental, and commence the drilling operations, as mentioned in finding No. 5-A. The plaintiffs were paid their $1 per acre on February 29, 1936, as mentioned in finding No. 8 herein."

Finding 7 is that on February 29, 1936, Ault went to plaintiff's land, then occupied by plaintiff's son, and told him he had come to stake out a well. A stake was set and on the same day a load of lumber and cement arrived at the location.

Finding 8 is as follows:

"8. While the operations mentioned in finding No. 7 were going on, William Wagner, of the firm of Wagner & Wagner, went to the plaintiffs' residence a few miles north of the place occupied by Ralph Loflin, and with Walter Kline, a notary public, who accompanied him, went into the house. He stated to the plaintiffs that Mr. Ault was then over on their land staking out a well, and, that he, Wagner, had come to pay them their rental. He showed them a check for $800 and asked them to sign a receipt therefor. A receipt was presented, but Ida M. Loflin had broken her glasses and was unable to read it. John G. Loflin, on account of poor eyesight, was unable to read all of it and inquired of Mr. Wagner what it was. Mr. Wagner replied that it was a receipt to show that you've got your money. Whereupon, the plaintiffs signed the receipt and the check for $800 was handed to Mr. Loflin. Such payment would not have been accepted had plaintiff known that no well would be drilled as provided by his contract."

Finding 9 is as to the receipt heretofore referred to in this opinion. Finding 10 is that several men came on plaintiff's land in March, 1936, with more materials, dug a cellar and slush pond and left. Later the materials were removed by the same men. Finding 11 details the fact that on March 5, 1937, Ault went to the depository bank and handed the cashier his check for $800, payable to the bank, saying it was to pay rentals due plaintiff; that plaintiff refused to accept it, informing the cashier that he considered the lease void. Reference is made to a series of letters between the bank and Ault pertaining to the matter. Finding 12 refers to digging of a cellar on land of Dite, another lessor, in March, 1937, and that nothing further was done. Findings 13, 14 and 15 are as follows:

"13. No declaration of forfeiture was ever made by the plaintiff to the defendants, nor did the plaintiff ever tender back the rental payment of 1926 [1936], and that none of the defendants had any notice prior to March 6, 1936 [1937], of any dissatisfaction or objection to the continuation of the lease.

"14. On July 25, 1936, Alfred W. Ault, the record owner of the oil and gas lease here involved, made an assignment of said lease to the defendant, Victor A. Modier, which assignment was filed for record on September 9, 1936. That said assignment was made for a stated consideration of $1. The defendant, Victor A. Modier, did not personally appear or attend the trial of this case or give testimony therein. The original oil and gas lease from the plaintiffs to Alfred W. Ault was never delivered to Victor A. Modier, nor

did he ever have possession of the same, and does not appear to have ever exercised any acts of dominion or ownership of said lease or the estate covered thereby. On the other hand, the defendant Ault, after the date of the recording of said assignment, continued to exercise acts of ownership of said lease. The court finds that said assignment was not made in good faith, that at the date thereof, the defendant, Victor A. Modier, had knowledge of facts and circumstances sufficient to place him on inquiry, and notice of the various agreements between the plaintiffs and the defendant Ault relative to the drilling of a well in said block, and the pretended effort of the said Ault to drill thereon.

"15. The court further finds that the staking out of the well location on the Loflin lands on the 29th day of February, 1936, and the completion of a well cellar and slush pond at said location during the next three or four days, which acts were never followed up by any further operations towards the commencement or drilling of a well, were not done in good faith; and that likewise the digging of a well cellar at the location on the Dite land between the 1st and 5th day of March, 1937, by the defendant H. A. Skow, which was never followed up by any further operations on said Dite land, was not in good faith. That none of these acts were done with any real intention of continuing the operations at either of these locations, were done on mere pretense, and in an effort on the part of the defendant, Alfred W. Ault, to hold the lease of plaintiffs and the leases of the other landowners for speculative purposes."

The conclusions of law, in full, were as follows:

"1. Neither the staking or the well location and digging of a well cellar and slush pond on Loflin land on the last day of February and the first three or four days of March, 1936, nor the staking of a well location and digging of a well cellar on the Dite land between the 1st and 5th of March, 1937, none of which were ever followed up by any further operations, constituted a commencement of operations for the drilling of a well as required by the terms of the original escrow agreement of date of March 5, 1935, and the supplemental (extension) agreement of date of December 5, 1935.

"2. Operations for the drilling of a well not having been commenced as provided by the original escrow agreement and supplemental agreement, and not having followed up with due diligence so as to complete a well within 12 months after the commencement thereof, as provided by the original escrow agreement, the Loflin lease in question became null and void and was wholly terminated by the express terms of said agreements prior to March 5, 1937.

"3. The lease in question having become void and terminated prior to March 5, 1937, the deposit of the $800 on that date at the Ellis State Bank by the defendant did not revive or renew such lease.

"4. The original escrow agreement of March 5, 1935, and lease of the same date from plaintiff to the defendant Ault, and the supplemental agreement of December 5, 1935, were all parts of the same contract, and are all to be considered and construed together.

"5. The lease in question is subject to cancellation upon equitable grounds, as well as being void under the express terms of the escrow agreement and supplemental agreement.

"6. Plaintiffs are entitled to judgment for the cancellation of the lease in question and quieting title as against all of the defendants, and judgments should be entered accordingly."

Although appellants make no specific argument that the findings of fact are wrong, they predicate their argument that appellee accepted the moneys paid on March 5, 1936, as delay rentals, and not as consideration for the supplemental agreement of December —, 1935, and that by so accepting appellee waived performance under the supplemental agreement, upon conclusions of fact at variance with those found by the trial court. We have examined the record as contained in the abstract and counter abstract and conclude the findings of fact as made by the trial court are sustained by competent evidence, and that there is no evidence which compels any contrary findings.

The first and principal question now before us is the terms and conditions of the oil and gas lease and of the concurrent escrow agreement, both dated March 5, 1935, and of the supplemental agreement dated December —, 1935. A similar series of agreements was under consideration in *Shoup v. First Nat'l Bank*, 145 Kan. 971, 67 P. 2d 569, where it was held:

"Where oil and gas leases are deposited in escrow in banks for delivery under terms of written contracts, which contracts are later modified by supplemental contract, the rights and duties of the various parties are to be determined from all of the provisions of the contracts, the construction of the contracts being a question of law." (Syl. ¶ 1.)

And so we examine the documents to determine their meaning and effect. It cannot be gainsaid that the provisions of the oil and gas lease as to drilling a well by March 5, 1936, or in lieu thereof paying delay rentals, were not modified by the concurrent escrow agreement, the provisions of which have been noted above. Although Ault made the payment therein required by the first escrow agreement, there is and can be no claim that he complied with the portion relative to commencing and completing a well. This is clear from the second escrow agreement by which he obtained an extension of time, and it was only in respect to extension of time that the first escrow agreement was modified. Appellants do not contend that appellant Ault performed under the supplemental agreement—they say appellee waived performance by accepting delay rentals. At the time Ault made the payment of $800 to appellee in March, 1936, the receipt quoted above and mentioned in the findings was signed by appellee. Some argument is made that appellee did not

seek to have the receipt set aside. It is true there was no specific allegation that the receipt be reformed, but it was specifically alleged the amount paid by Ault and received by appellee was consideration for the extension agreement and not for extension of the lease. The receipt was not a contract nor such an instrument in writing that it could not be explained by parol. (See *Railway Co. v. Lovelace*, 57 Kan. 195, 45 Pac. 590, and *Blomberg v. State Bank*, 118 Kan. 688, 241 Pac. 242, and the cases referred to therein.) Appellant says that the appellee may not show by parol that the moneys paid were consideration for the escrow agreement of December —, 1935, as the effect would be to vary and contradict the terms of a written instrument. In support, *Stanley v. Blair*, 137 Kan. 469, 21 P. 2d 311, is cited. The case is not in point. There a definite bilateral contract for a specified consideration was involved. The effect of that decision is that in such a contract it may not be shown the consideration was other than that specified. It has been noted that the consideration of the last escrow agreement is stated to be "$1 and other good and valuable consideration." It has been held that whenever a contract shows on its face that it is incomplete, parol evidence may be received, not to vary or contradict its terms, but to show the complete agreement. (See *Shire v. Bank*, 112 Kan. 690, 213 Pac. 159; *Milling Co. v. Waite*, 112 Kan. 809, 213 Pac. 160; *Robben v. Farmers Coöperative Co.*, 128 Kan. 310, 278 Pac. 10, and cases cited therein.) In the present case, oral testimony, properly received and given credit by the trial court, was to the effect that under the last escrow agreement appellee was to receive $800 as consideration for the contract, and the payment of March, 1936, was to satisfy that consideration. That being true, the entire agreement, as evidenced by the oil and gas lease and the two escrow agreements, was that if Ault did not commence a well by March 1, 1936, and complete it within twelve months after commencement, the oil and gas leases were void. Although prior to the payment, a well had been located and some work done on the cellars, there is no claim that a well was commenced and completed in the time fixed, hence the leases expired by the terms of the agreement. It is unnecessary to discuss appellants' contentions with reference to forfeiture, as all are predicated on the proposition the payment of March 5, 1936, was of delay rentals. It may be remarked that appellee was under no obligation to tell either of the appellants the

leases were or would be void for noncompliance with the terms of the escrow agreements; the agreements themselves so stated.

Insofar as the appellant Modier is concerned, the trial court found the assignment to him was not made in good faith and without notice. Modier contends that even though he had notice of the supplemental agreements, he was warranted in relying on the receipt which stated the leases were in force. While the receipt was recorded, there was no testimony that Modier knew of its existence. Although Modier filed an answer, he did not appear and testify in support of the allegations of his answer. The evidence showed that the assignment from Ault to Modier was made on July 25, 1936, and thereafter Ault had no interest, yet the attempted payment of rentals in March, 1937, was made by Ault personally, through the use of his and not Modier's moneys. And it may be further remarked that a careful search of Ault's evidence as abstracted fails to disclose that Ault said he made the payment on behalf of anyone other than himself. The finding with respect to Modier has support in the evidence.

We conclude the trial court did not err in quieting appellees' title, and its judgment is affirmed.