No. 30,900.

THE HOME HARDWARE & IMPLEMENT COMPANY, *Appellant,* v. R. C. DENNISTON (THE SOUTHWEST NATIONAL BANK, Intervener), *Appellee.*

(18 P. 2d 135.)

Opinion filed January 28, 1933.

*S. S. Alexander,* of Kingman, for the appellant.

*O. W. Helsel,* of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by the assignee of the book account of a hardware merchant against a farmer. The defense was a set-off which had satisfied the account in a collateral transaction which must be stated at some length.

In 1929 and for several years prior thereto the John Bomholt Hardware Company, a corporation, was engaged in the retail hardware and farm implement business in Cheney. The defendant, R. C. Denniston, was a farmer of that neighborhood. He was a customer of the hardware company and had a charge account on its books. In May, 1929, the manager of the hardware company, John Bomholt, solicited him to buy a harvesting outfit consisting of a tractor and harvester-thresher, to cost $2,200—$1,000 payable on July 1, 1929, and $1,200 on July 15, 1930. As an inducement Bomholt undertook to procure 400 acres of wheat for Denniston to harvest at $3 per acre, which would enable him to pay off the first of these notes and give him $200 in addition thereto to pay for the oil, gasoline and other incidental expenses of the work. Denniston accepted; he cut the wheat acreage provided by Bomholt (although it was somewhat less than the agreed amount); and Bomholt returned to Denniston his note for $1,000 according to the agreement. About that time or later Denniston's charge account on the books of the company for various items amounted to $109, but no final settlement had been made between him and the company for the $200 he was to receive over and above his $1,000 note; and this status of affairs between the parties continued until July, 1930, at which time the hardware company became bankrupt. The trustee in bankruptcy sold its book accounts. The account of present concern, for $109, appearing on the books of the bankrupt company as a charge account against Denniston, was sold to the plaintiff; and this action was to recover thereon. Certain parties owing money to Denniston were garnisheed, and the Southwest National Bank of Wichita intervened, but these details may need no attention.

Denniston's answer pleaded the foregoing facts. Issues were joined, and the cause was tried before a jury which returned a general verdict for defendants and answered special questions, some of which read:

"1. Did the defendant, R. C. Denniston, secure credit on his account sheet

with the Bomholt Hardware Company by notes for the full purchase price of the combine and tractor purchased about June 1, 1929? A. Yes.

"2. How many acres did Denniston cut in 1929 for

" (a) John Bomholt? 150 acres.

" (b) C. B. Payne? 200 acres.

" (c) Will Hillman? 150 acres.

. . . . . . . . . . . . . . . . . .

"4. Was the Hillman wheat to be credited on any wheat cutting to be furnished by Bomholt? A. No."

Judgment was entered for defendants, and plaintiff appeals, urging certain matters which will now be considered.

It is first contended that in permitting John Bomholt to testify to the transactions which resulted in a balance of credit being due Denniston on account of the wheat-acreage agreement of 1929, the trial court violated a cardinal rule of evidence that one who has parted with his title cannot afterwards be heard to give testimony in derogation of that title. That rule is an elementary and familiar one, but it has no application here. Bomholt gave no testimony in derogation of plaintiff's title. Nobody disputed plaintiff's title; nobody denied that the charge account which the trustee in bankruptcy sold to plaintiff was *bona fide;* but the trustee in bankruptcy did not guarantee that there were no set-offs to that account; he did not and could not guarantee that it was just, due and unpaid. The account was just as good in the hands of plaintiff as it had been in the hands of the trustee or in the hands of the Bomholt Hardware Company itself, but it was no better. Even a casual reading of *Scheble v. Jordan,* 30 Kan. 353, 1 Pac. 121, cited by plaintiff, ought to show that it is not an authority against the admissibility of Bomholt's testimony. In that case Mrs. Robinson sold and executed a bill of sale to Scheble for two horses. After she had parted with her title (and her warranty thereby implied) she made statements and declarations against the title she had already conveyed, and those statements and declarations were admitted in evidence to resist Scheble's claim to the horses. Of course such evidence was inadmissible; but it has no bearing on the present case.

It is also contended that evidence of the agreement involved in the sale of the tractor and harvester was incompetent, and constituted no defense or set-off to plaintiff's demand. Appellant invokes the rule that parol evidence is inadmissible to contradict the terms of a written contract or to modify and alter its specific terms. If

this were an action on the contract for the purchase of the harvesting outfit, or on the notes given therefor, this rule of evidence would be pertinent. But we can conceive of no rule of evidence or of good conscience which would deny defendant the right to plead and prove his $200 set-off to the account sued on in this action. In *Weeks v. Medler*, 20 Kan. 57, it was said:

"While parol testimony is inadmissible to change or contradict the terms of a written contract, yet a parol contract may be made between the parties contemporaneously with the execution of the written agreement, providing it is separate and independent, and its terms in no way conflicting with or contradictory of the written stipulations. Thus, where A sold to B a sewing machine at a stipulated price, and received a negotiable note in payment therefor, *held,* that it was competent for B to prove a contemporaneous parol agreement that A would furnish him work for said machine at a stipulated price and within a stipulated time, and a breach of said contract by A; and B can set off the damages sustained by said breach against the money due on the note. [Citations.]" (Syl. ¶ 3.)

In *Rice v. Rice,* 101 Kan. 20, 165 Pac. 799, it was said:

"Although the terms of a written obligation, assumed to be valid, cannot be varied by parol, it may be shown by parol what caused the party thus to obligate himself, and thereby test the question whether he is legally bound, as the writing imports, or whether he is by any cause wholly or partially freed from liability thereon." (Syl. ¶ 1.)

Even in cases where the written obligation is itself the subject matter of the litigation and the immediate parties are the litigants, evidence is admissible to show the circumstances under which the obligation was undertaken (*Peoples State Bank v. Hoisington Mercantile Ass'n,* 118 Kan. 61, 71, 234 Pac. 71; *Farmers State Bank v. Montgomery,* 129 Kan. 203, 282 Pac. 741); and of course an assignee of a bankrupt's accounts is in no stronger position than the bankrupt himself would be. (7 C. J. 130, 133, 143.)

It is also urged that defendant failed to show damage because Bomholt did not secure all the agreed acreage for defendant to harvest. The controlling feature of the agreement, however, was not merely that Bomholt should procure 400 acres to harvest, but that he should supply defendant with sufficient harvesting work to pay off the $1,000 note and yield him $200 in cash in addition thereto for expenses. Between Bomholt and Denniston that agreement was perfectly good, and pursuant to its terms Denniston harvested what acreage of wheat Bomholt did procure. And likewise pursuant to the agreement Bomholt did surrender to Denniston the $1,000 note.

We cannot see that in this situation Bomholt could have defeated Denniston's set-off for the additional $200, and it follows that plaintiff cannot do so.

Some complaint is made against the trial court's ruling on plaintiff's demurrer to an answer filed in this action by the Southwest National Bank which had been permitted to intervene, but as that ruling did not affect the result it need not be considered.

The record discloses no prejudicial error and the judgment is affirmed.

THIELE, J., not participating.