No. 37,671

Maurice Barton and Ruth Barton, *Appellees*, v. Earl Hackney, *Appellant*.

(208 P. 2d 590)

Opinion filed July 9, 1949.

*A. R. Lamb,* of Coffeyville, argued the cause and *Clement A. Reed,* of Coffeyville, was with him on the briefs for the appellant.

*Aubrey Neale,* of Coffeyville, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action to enjoin the defendant from operating a café, and for damages. The trial court overruled defendant's demurrer to plaintiffs' petition. Defendant has appealed.

The petition alleged the residence of the parties at Coffeyville and that plaintiffs were the joint owners of a restaurant in Coffeyville, which they had purchased from defendant. It alleged that a restaurant had been in operation at the same address in Coffeyville for over forty years and for fifteen years had been commonly known as "Earl's Café"; that the same employees had worked for the defendant at that restaurant for some seventeen or eighteen years; that defendant offered to sell the business and good will to the plaintiffs and represented that in addition to being the sole owner of Earl's Café he was a silent partner in the Alvin Café; that he took no active part in the operation of this business; that his health made it necessary for him to retire from the active operation of the restaurant. The petition also alleged that on May 3, 1948, relying on these representations, plaintiffs purchased Earl's Café from defendant for $10,500 and defendant signed a sales contract, in which he agreed as a part of the consideration not to engage in the café or eating business in Coffeyville for a period of five years except for his interest in the Alvin Café. (A copy of the written contract was attached.) The petition also alleged that prior to the payment of the purchase price plaintiffs and defendant talked with defendant's employees and they were all willing to continue working for the plaintiffs as they had been working for the defendant; that plaintiffs took possession of the restaurant and had been operating it ever since until the filing of the action. The petition further alleged that on and until about June 7, 1948, plaintiffs enjoyed the business and good will purchased from the defendant and the regular

employees continued to work for them as they had for the defendant and that this condition would have continued except for the acts of defendant alleged. The petition further alleged that immediately after the sale to the plaintiffs the defendant in violation of the terms of the contract bought the interests of the other owners in the Alvin Café; took over its complete ownership and management and induced employees who were working for plaintiffs and had previously worked for the defendant at Earl's Café to leave plaintiffs' place of business and work for the defendant; that he had offered these employees increases in wages and represented that plaintiffs would be forced to close in a short time on account of the defendant's taking the business away from them. The petition further alleged that the acts of defendant in violation of the sales agreement in operating a café in competition with the plaintiffs and hiring plaintiffs' employees had caused plaintiffs great damage and that since June 7, 1948, plaintiffs had been damaged in the sum of $125 per week on account of these violations and the defendant had continued to violate the agreement and was continuing to cause plaintiffs further damage, for which plaintiffs could not be compensated and for which they did not have an adequate remedy at law. The petition alleged further that as a result of defendant's breach of his contract that plaintiffs have been damaged and are entitled to the sum of $2,375 up to October 18, 1948, and were entitled to recover the additional sum of $125 per week until defendant ceased to violate the contract and in addition plaintiffs are entitled to an injunction for a period of five years from May 3, 1948, enjoining the defendant or anyone acting in his behalf from hiring employees who were working for him in the business sold to the plaintiffs and from operating the café purchased by him or from doing any acts which prevented the plaintiffs from enjoying the benefits and good will of the business purchased by them to the same extent as were enjoyed by the defendant prior to the sale to the plaintiffs. The prayer was for the damages alleged and for an injunction.

The sales contract is short and will be set out verbatim, as follows:

EXHIBIT A

"Sales Contract

"Dated at Coffeyville, Kansas, this 3rd day of May 1948.

"I, Earl Hackney, of Coffeyville, Kansas, warrant that I am the sole owner of all equipment, dishes and other operating equipment of a place of business popularly known as 'Earl's Café', but also known under the name of Earl Hackney Café, located at 910 Walnut Street, Coffeyville, Kansas. I war-

rant that all equipment, dishes, and other operating equipment are debt free, and, will agree to reimburse the purchasers to be named later for any unpaid bills for the above named items.

"I, Earl Hackney, do hereby sell, assign, and warrant all of the above equipment located at 910 Walnut Street, Coffeyville, Kansas, under the Kansas Bulk Sales Law to Maurice and Ruth Barton of Coffeyville, Kansas, for the sum of $10,500.00 (Ten Thousand Five Hundred Dollars).

"I, Earl Hackney, do hereby further agree that I will not actively engage in the café or eating business in Coffeyville for a period of 5 (Five) years, excepting for my interest in the Alvin Café located in Coffeyville, Kansas, and, as has been fully explained to Maurice and Ruth Barton prior to the date of this sale."

The defendant demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action in favor of plaintiffs and against the defendant. The court overruled this demurrer and defendant has appealed.

The assignments of error are that the trial court erred in overruling the demurrer of defendant to plaintiffs' petition: First, because by the terms of the written contract the defendant reserved the right to operate the Alvin Café and that the contract could not be varied by parol agreements alleged by plaintiffs in their petition; second, that part of the written contract that purported to prohibit the defendant from engaging in the café or eating business in the City of Coffeyville was without consideration; and third, that the written contract between the parties, if construed according to the contention of the plaintiffs, was in violation of G. S. 1935, 50-112, and is void as being in restraint of trade and free competition.

On the first point defendant argues that the "words excepting for my interest in the Alvin Café" took out of the promise, not to actively engage in the café business in Coffeyville for five years, any activity in which he might engage with reference to the Alvin Café, that is, construing the contract as written he argues he made no promise not to operate the Alvin Café, as has been fully explained to Maurice and Ruth Barton prior to the date of this sale. He realizes the plaintiffs pleaded in their petition that defendant represented to them at the time the sale was made that he was a silent partner in the Alvin Café and owned only a small interest in it and took no active part in its operation. He argues, however, that plaintiffs cannot prove these and similar allegations because to permit them to do so would be to permit them to vary the express terms of a written contract. He cites many authorities

where we have held that this cannot be done. There is no doubt about that being the rule. We must examine this record, however, to ascertain whether this evidence would vary the terms of the contract. Defendant promised not to engage in the eating business in Coffeyville for five years except for his interest in the Alvin Café. What was that interest? Evidently the parties had discussed it because the written contract speaks of an explanation. Under such circumstances, parol evidence is admissible to show an oral contract made at the same time the written contract was entered into where the oral contract did not vary the terms of the written contract.

In *Weeks v. Medler*, 20 Kan. 57, the action was to collect a note given for the purchase of a sewing machine. The note was given in connection with a written contract of sale. One defense pleaded was that at the time the written contract was entered into the payee of the note agreed to furnish the defendant all the material necessary for the manufacture of quilts at a specified price sufficient to pay for the machine and that payment of the notes was to be demanded only in case of a failure of the defendant to manufacture the material furnished into quilts and the plaintiff had refused to deliver the material, even though the defendant had demanded it. The answer further pleaded that the foregoing was an oral contract. The trial court rejected all evidence of this contract on the ground that to admit it would be to vary the terms of a written contract. We held this was error and said:

"It may be conceded that some of the allegations in this defense are of matters conflicting with the terms of the written contract; but still we think it is distinctly averred that there was a cotemporaneous contract for work, a contract separate and independent from the contract evidenced by the note, and in no respects contradictory and conflicting with its terms."

*Rice v. Rice*, 101 Kan. 20, 165 Pac. 799, was an action on a note and to foreclose a mortgage. The defense pleaded was the property actually was a gift to the mortgagor and his wife and the note and mortgage was given as an accommodation to the mortgagee. The trial court permitted this defense to be proved and gave judgment in favor of the defendants. On appeal the plaintiff argued that the trial court erred in permitting the defense to be proved because it had the effect of varying the terms of the note and mortgage. We said:

"The evidence, however, was not offered for that purpose. The defendants concede that the instruments are precisely what the maker and the payee in-

tended them to be—a note and mortgage, which in the hands of a holder in due course would be enforceable against the maker and against the property described in the mortgage."

See, also, *Home Hardware & Imp. Co. v. Denniston,* 136 Kan. 838, 18 P. 2d 135.

Aside from the foregoing authorities, there is a rule to the effect that where a contract shows on its face that it is incomplete or ambiguous parol evidence may be received not to vary or contradict its terms but to show the complete or actual agreement. (See *Loflin v. Ault,* 149 Kan. 340, 87 P. 2d 524.)

In *Kirk v. First National Bank,* 132 Kan. 404, 295 Pac. 703, the action involved an interpretation of an escrow agreement and a written contract for the purchase of an assignment of an oil and gas lease. The trial court admitted oral testimony as to the time when the assignment was to be furnished. On appeal it was argued that this was error. We said:

"It is well established that when a written contract is silent as to a particular matter discussed and agreed upon between the parties, parol evidence may be offered on that matter without varying the written contract."

The reasoning of that opinion and of those cited by the court in support of it is apropos here. The contract in question spoke of the interest of defendant in the Alvin Café. It would be impossible to know what that interest was, so that the contract might be enforced without oral testimony.

See, also, *Kanzius v. Jenkins,* 98 Kan. 94, 157 Pac. 417.

It is clear that proof of the matter pleaded in the petition would not vary the terms of the written contract.

Defendant next argues that his demurrer should have been sustained because there was no consideration for his contract to stay out of the restaurant business. He argues that the only consideration mentioned in the contract was $10,500 paid by plaintiffs for the restaurant and that this consideration was for the equipment in the restaurant and nothing else. An examination of this contract discloses that the agreement of defendant to stay out of the restaurant business was a part of the contract of sale. Under such circumstances everything to which plaintiffs claim they were entitled was part of the consideration for which the $10,500 was paid. The whole transaction is all part of one indivisible contract.

Defendant next argues that the contract is unenforceable because it is in violation of G. S. 1935, 50-112. That section provides as follows:

"That all arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view or which tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state, or in the product, manufacture or sale of articles of domestic growth or product of domestic raw material, or for the loan or use of money, or to fix attorneys' or doctors' fees, and all arrangements, contracts, agreements, trusts or combinations between persons or corporations, designed or which tend to advance, reduce or control the price or the cost to the producer or to the consumer of any such products or articles, or to control the cost or rate of insurance, or which tend to advance or control the rate of interest for the loan or use of money to the borrower, or any other services, are hereby declared to be against public policy, unlawful and void."

This point is not good. That statute was not passed with the intention of prohibiting such a contract as this made in connection with the sale of a business. We dealt with a similar situation in *Mills v. Cleveland,* 87 Kan. 549, 125 Pac. 58. The statute was in effect at that time. A doctor used formulas prepared by himself in the treatment of patients. He sold his interests in the practice to Thompson and agreed not to practice or attempt to practice the treatment of these diseases except for certain reservations. He maintained his office with another doctor and pretended he was treating diseases other than those he had agreed not to treat. The buyer brought an action to enjoin him and his partner from doing any act which prevented the buyer from enjoying the benefits of such influence and good will as he had purchased to the same extent as they had enjoyed there before the sale. We said:

"This court has taken the view that contracts in general restraint of that natural rivalry which ordinarily exists in trade and other business pursuits are inimical to the public welfare, and that the decisive test of the validity of less restrictive contracts is the resulting injury to the public."

In that opinion we distinguished such a contract and one that stifled competition between public service and like corporations. We held that the enforceability of such a contract was to be determined by the reasonableness of its provisions under all the surrounding facts and circumstances.

See, also, *Pohlman v. Dawson,* 63 Kan. 471, 65 Pac. 689; also *Fox v. Barbee,* 94 Kan. 212, 146 Pac. 364. In *Heckard v. Park,* 164 Kan. 216, 188 P. 2d 926, we again reasserted the rule that such contracts are to be examined with the idea of ascertaining whether the restraint involved is reasonable under all the facts and circumstances. In that case a young singer had signed a contract with a trainer and teacher wherein she agreed:

"(A) Not to employ or accept tutelage from any musical instructor without plaintiff's written consent.

"(B) To engage plaintiff's services as defendant's exclusive manager and agent, with authority to contract for all performances to be rendered by defendant; and in this connection, to give such performances and auditions as plaintiff might request and to refrain from giving performances without plaintiff's written consent; to entrust all publicity to plaintiff and not to solicit or procure publicity without the written approval of plaintiff.

"(C) To conduct herself properly and with fitting decorum, avoiding all unfavorable publicity and notoriety."

It was argued that this agreement was in violation of G. S. 1935, 50-112. We said in *Heckard v. Park,* supra:

"The old rule as to limitations of time and space has given way to that of reasonableness. (*Fox v. Barbee,* 94 Kan. 212, 146 Pac. 364.) The question of reasonableness of a contract of this character frequently depends upon fundamental elements of common fairness in view of the facts and circumstances of the parties."

We see nothing unreasonable about the interpretation put on the contract by plaintiffs in this petition.

The judgment of the trial court is affirmed.