**Andres CORTEZ a/k/a Andy Cortez, Appellant,**

v.

**NATIONAL BANK OF COMMERCE OF BROWNSVILLE, Appellee.**

**No. 1351.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 22, 1979.

Rehearing Denied March 22, 1979.

Lee Arnett, Brownsville, for appellant.

Franklin T. Graham, Jr., Brownsville, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit on a guaranty agreement. Plaintiff, National Bank of Commerce of Brownsville, Texas, sued defendant, Andres Cortez, for breach of a written agreement guaranteeing payment of a certain note executed by Cortez on behalf of Southmost Motors, Inc., d/b/a Southmost Dodge, and payable to plaintiff bank. After a trial to the court without the intervention of a jury, the court entered judgment awarding the bank judgment of $19,979.56 representing the total principal and interest due on the underlying obligation and attorney's fees. Cortez appeals.

The bank's original petition alleged that Southmost Motors, Inc., a Texas corporation, while doing business as Southmost Dodge, by and through defendant Cortez, executed a promissory note in the principal amount of $17,800.00 payable in installments commencing on August 14, 1976, and ending on July 14, 1977; and that Southmost defaulted on the note leaving a principal balance due and outstanding of $16,-592.62 plus interest. The bank further alleged that, on July 14, 1976, Cortez contemporaneously with the execution of the note, executed and delivered an agreement guaranteeing the payment of the note that was executed by him on behalf of Southmost. Cortez, in addition to the filing of a general denial, specifically pled that the guaranty agreement was unsupported by consideration.

The evidence introduced at trial established that Southmost Motors, Inc., was a closely held Texas corporation organized sometime in 1969 and was now defunct.

Cortez was a principal officer of the corporation. Cortez, his wife and brother each owned one-third of all of the corporation's stock. On July 31, 1975, the corporation "went out of business." The Small Business Administration and Chrysler Credit Corporation "took over" all of the corporate assets. The corporation has received no income since it ceased business operations. Its franchise taxes have remained unpaid since that time.

Sometime in 1974, while the corporation was still in operation, it executed a note in the principal amount of $25,000.00 payable to the bank. Cortez testified that the Small Business Administration guaranteed the note and "paid 18 months in advance." After the corporation went out of business, no further payments were made to the bank. In 1976, when the final payment on this note became due, Cortez testified that Mr. George Nelson, the bank's president, contacted him to discuss the unpaid balance due on the note. Pursuant to their discussions, Cortez testified that he then executed, on behalf of the corporation, a second note payable to the bank in a principal amount of $17,800.00 which represented a "renewal and extension" of the then outstanding balance due on the prior note. The terms of the renewal note required payments on the principal to be made in eleven equal monthly installments of $100.00 with a final twelfth installment of the remaining principal amount plus interest due on August 14, 1977. Cortez, contemporaneously with the execution of the note on behalf of the corporation, executed a personal guaranty agreement guaranteeing the payment of the $17,800.00 note. The guaranty agreement Cortez executed was a form contract entitled "Continuing Guaranty."

Richard Hinojosa, senior vice president of the bank, testified that the bank had received no payments since July 14, 1977, the date the last payment on the renewal note had been made. Cortez testified that he received no money or any other remuneration for signing the guaranty agreement. The trial court entered its judgment in favor of the bank. No findings of fact or conclusions of law were requested or filed.

On appeal, Cortez asserts in a single point of error that the guaranty agreement was unenforceable because it was not supported by consideration. First we consider the bank's contention that under the provisions of the Texas Uniform Commercial Code, no consideration was necessary.

■ Section 3.408 of the Texas Uniform Commercial Code, Tex.Bus. & Comm.Code (1968), entitled "consideration," provides, in relevant part, as follows:

"Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (Section 3.305), except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind. Nothing in this section shall be taken to displace any statute outside this title under which a promise is enforceable notwithstanding lack or failure of consideration."

The applicability of Article 3, of which Section 3.408 is a part, is limited to commercial paper, including, drafts, checks, certificates of deposit and notes as defined in Section 3.104(a)(2). See Tex.Bus. & Comm.Code § 3.103 and comment 1 (1968). An "instrument" within the meaning of Section 3.408 is "a negotiable instrument." Tex.Bus. & Comm.Code § 3.102(a)(5) (1968). One of the purposes of Section 3.408 is to remove the necessity for new consideration in certain instances such as the execution of a note or draft as payment of or as security for a debt already owed by the party giving it. *James Pair, Inc. v. Gentry*, 134 Ga.App. 734, 215 S.E.2d 707, 708 (1975); Tex.Bus. & Comm.Code § 3.408, comment 2 (1968).

■ The bank did not seek to enforce the debt evidenced by the promissory note. It sued Cortez to enforce his obligation under the terms of the contemporaneously executed guaranty agreement. This guaranty agreement is not a negotiable instrument and is not governed therefore by the provisions of the Texas Uniform Commercial Code. See Tex.Bus. & Comm.Code § 3.104

(1968); *United States Gypsum Co. v. Sampson*, 496 S.W.2d 687, 691 (Tex.Civ.App.— Amarillo 1973, no writ); *Eikel v. Bristow Corp.*, 529 S.W.2d 795, 799 (Tex.Civ.App.— Houston [1st Dist.] 1975, no writ); *James Pair, Inc. v. Gentry*, 134 Ga.App. 734, 215 S.E.2d 707, 708 (1975); 2 Anderson, Uniform Commercial Code § 3–408:7. Anderson in his treatise on the Uniform Commercial Code said:

> "Code § 3–408 governs only the liability of a party on commercial paper. It does not purport to regulate agreements which may be entered into collaterally with the execution of commercial paper. Whether consideration is required for such other agreements and whether it exists will be determined by pre-Code principles which continue in force because not displaced." 2 Anderson, Uniform Commercial Code, § 3–408:7 (2d Ed. 1971).

We must, therefore, examine appellant's point of error in light of other Texas statutory and common law principles.[1]

■ All written contracts, including guaranty agreements, are presumed, at the outset, to be supported by consideration. This statutory presumption is designed to import consideration in the absence of the formality of a seal. *Unthank v. Rippstein*, 386 S.W.2d 134, 138 (Tex.Sup.1964); *Maykus, Jr. v. Texas Bank & Trust Company of Dallas*, 550 S.W.2d 396, 398 (Tex.Civ.App.— Dallas 1977, no writ); *Waters v. Waters*, 498 S.W.2d 236, 240–41 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); Tex.Rev.Civ.Stat. Ann. art. 27 (1969). Since the guaranty agreement in question presumptively imports a valid consideration, the burden was upon Cortez to plead and prove the absence of such consideration. *Maykus, Jr. v. Texas Bank & Trust Company of Dallas*, 550 S.W.2d 396, 398 (Tex.Civ.App.—Dallas 1977, no writ); *Newton v. Newton*, 77 Tex. 508, 14 S.W. 157, 158 (1890); *Decor Dimensionals v. Smith*, 494 S.W.2d 266, 268 (Tex.Civ. App.—Dallas 1978, no writ); see Rule 94,

Texas Rules of Civil Procedure. Cortez relies on the evidence adduced at the trial that neither he nor Southmost Motors received an extension of additional credit nor additional money at the time the renewal and extension note and the guaranty agreement were signed.

■ In considering Cortez' single point of error, we must keep in mind the familiar rules governing the scope of our review. In cases, such as the one before us, where there are no findings of fact and conclusions of law and none have been requested, the trial court's judgment will be affirmed if it can be upheld on any legal theory that is supported by the evidence. *Seaman v. Seaman*, 425 S.W.2d 339 (Tex.Sup.1968); *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.Sup. 1962); *Mobile County Mutual Insurance Co. v. Jacobs*, 531 S.W.2d 436, 438 (Tex.Civ.App. —Corpus Christi 1975, no writ). It is assumed at the outset that the trial court resolved every issue of fact that was supported by the evidence in the appellee bank's favor. We view such evidence in the light most favorable to such implied findings, disregarding all evidence that is contrary thereto. *James v. Dyre*, 159 Tex. 321, 320 S.W.2d 319 (1959); *Loyd W. Richardson Construction Corporation v. Corpus Christi State National Bank*, 513 S.W.2d 287 (Tex. Civ.App.—Corpus Christi 1974, no writ).

■ Even assuming the testimony introduced by Cortez for the purpose of showing the absence of consideration was sufficient to rebut the statutory presumption that a written contract is supported by consideration, there remains ample evidence in the record to support the trial court's implied finding that, contrary to appellant's assertion, the guaranty agreement in question was supported by consideration. By the express terms of the guaranty agreement, Cortez agreed to guarantee the obligations of Southmost Motors "for the purpose of

---

1. Tex.Bus. & Comm.Code (1968) Section 1.103 provides as follows:

    "Unless displaced by the particular provisions of this [Act] the principles of law and equity, including the law merchant and the

    law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

480

enabling SOUTHMOST MOTORS, INC., d/b/a SOUTHMOST DODGE . . . to obtain credit or other financial accommodations from [appellee Bank] . . ." The undisputed evidence introduced by both parties established that, at the time the "renewal and extension" note and the guaranty agreement were executed, Southmost Dodge was in default of its obligations under the terms of a pre-existing, past due promissory note. Cortez admitted signing the "extension and renewal" note on behalf of Southmost Dodge and that its recited principal amount of $17,800.00 represented the outstanding, past due balance and interest Southmost Dodge owed to the bank on a previous note.

■ A number of courts, including our Supreme Court, has held that to support a contract of guaranteeship, it is not necessary that any consideration pass directly to the guarantor. A consideration moving to the principal alone will suffice to bind the guarantor where the note evidencing the primary obligation and the guaranty agreement are executed contemporaneously. See *Bonner Oil Co. v. Gaines*, 108 Tex. 232, 191 S.W. 552 (1917); *Gubitosi v. Buddy Schoellkopf Products, Inc.*, 545 S.W.2d 528 (Tex.Civ.App.—Tyler 1976, no writ); *Hargis v. Radio Corp. of America, Electronic Components*, 539 S.W.2d 230, 232 (Tex.Civ. App.—Austin 1976, no writ); *Diamond Paint Company of Houston v. Embry, Jr.*, 525 S.W.2d 529, 533 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); *Waller v. Missouri City State Bank*, 482 S.W.2d 40, 43 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.); *Dean v. Allied Oil Co.*, 261 S.W.2d 900 (Tex.Civ.App.—Waco 1953, writ dism'd). Cortez' contention that the corporation did not receive a benefit from the execution of the "renewal and extension" note is without merit. We hold that there is ample evidence in the record to support the trial court's implied finding that the guaranty agreement in question was supported by consideration.

Although appellant makes some general arguments concerning the evidence that the corporate entity, Southmost Dodge, is no longer engaged in business and that its franchise taxes remain unpaid, there is no evidence that the debts of the corporation evidenced by the "renewal and extension" note had been subject to bankruptcy proceedings or otherwise legally discharged. See *Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79 (1946). Appellant's point of error is overruled.

The judgment of the trial court is affirmed.