David W. BOOTH, Plaintiff,

v.

**ELECTRONIC DATA SYSTEMS CORPORATION, Defendant.**

Civ. A. No. 91–2188–L.

United States District Court,
D. Kansas.

July 2, 1992.

James E. Kunce, Overland Park, Kan., for David W. Booth.

Barbara A. Harmon, Shook, Hardy & Bacon, Overland Park, Kan., John O. Sheller, Office of the Gen. Counsel, Electronic Data Systems Corp., Dallas, Tex. and Lee J. Hutton, Duvin, Cahn & Barnard, Cleveland, Ohio, for Electronic Data Systems Corp.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This is an action in which plaintiff David Booth alleges that his employment was unlawfully terminated by his employer, Electronic Data Systems Corporation (EDS). The plaintiff originally alleged eight state law and two federal law claims arising from his termination.[1] Jurisdiction of the state law claims is premised upon diversity of citizenship. 28 U.S.C. § 1332. The defendant has moved for summary judgment in its favor as to all of plaintiff's claims and as to a counterclaim raised by the defendant for enforcement of a promissory

---

1. Two of the plaintiff's state law discriminatory discharge claims, based upon an alleged breach of an implied duty of good faith and fair dealing in the employment contract and breach of a status based duty, were abandoned by plaintiff at oral argument on this matter. The plaintiff also abandoned his federal law ERISA claim in his brief in response to the defendant's motion for summary judgment.

note (Doc. # 27). For the reasons set forth below, the court grants the defendant's motion for summary judgment.

■ When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.*, 740 F.Supp. 1519, 1522–23 (D.Kan.1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

## I. FACTS

The following facts are uncontroverted for the purposes of this motion. Mr. Booth was employed by the defendant in its Systems Engineering Development (SED) program, which consists of three phases. During the first phase of the program, the employee works on client projects as a computer analyst. In the second phase, the employee receives several weeks of additional training at an EDS training facility. Before the employee enters phase two, however, he or she is required to sign a promissory note for $9,000 to protect the company's investment in the employee's ed-

ucation. The note must be repaid at various amounts if the employee is terminated or resigns before he or she completes three years of employment at EDS, and it is forgiven if the employee stays for longer than three years. In phase three of the program, the employee uses the training acquired during phase two on assignments for customers.

Mr. Booth signed a job application and formal employment agreement when he accepted a position at EDS. Both of these documents explicitly state that his employment was at will and that it could be terminated with or without cause at any time. Mr. Booth completed phase one of the SED program, signed a promissory note and completed his phase two training, and began phase three. After a series of disputes about his expense reimbursement requests for relocation fees incurred during the course of his employment, Mr. Booth was terminated for dishonesty and filing false expense reimbursement requests.

The plaintiff now pursues six state law claims and one federal law cause of action against EDS arising from his termination. EDS has counterclaimed for judgment on the promissory note for $9,000.00, which the plaintiff concedes he has not paid.

## II. DISCUSSION

### A. State Law Claims

■ Both parties contend that Kansas law should be applied by this court to determine the merits of the state law claims asserted by Mr. Booth. The express employment. agreement entered when Mr. Booth was hired by EDS, however, as well as the promissory note he signed before beginning phase two of the SED program, contain choice of law provisions which dictate that Texas law will govern any dispute arising out of those documents. Moreover, it appears from the record before the court that these documents were executed in Texas.

■ This court applies Kansas choice of law provisions in diversity cases to ascertain which state's substantive law to apply. *Klaxon Co. v. Stentor Electric Mfg. Co.*,

313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Kansas law dictates that the law of the state where the last act necessary to form a contract took place governs conflicts over the interpretation of the contract. *State Farm Mutual Automobile Ins. Co. v. Baker*, 14 Kan.App.2d 641, 797 P.2d 168 (1990). Therefore, the court concludes that Texas law should be applied to the claims that arise out of the employment agreement and the promissory note.

### 1. Wrongful Discharge Claim

■ In Count I of his complaint, Mr. Booth alleges that EDS breached an express and implied contract of continued employment when he was terminated. Alternatively, he argues that he is entitled to recover under a theory of promissory estoppel. He claims that EDS expressly or impliedly guaranteed him three years of continued employment because the promissory note would have been forgiven if Mr. Booth had completed three years of employment at EDS.

■ The employment agreement entered by Mr. Booth, however, as well as the employment application he signed and an employee handbook that he acknowledges receiving, include terms expressly indicating that he could be terminated by EDS at any time, with or without cause. Mr. Booth can point to no provision expressed by EDS to the contrary, and he admits that no one at EDS ever told him that he could only be fired for cause. Thus, EDS did not breach any express contract of employment. Moreover, the existence of an express provision covering the terms of Mr. Booth's employment precludes his claim that there was a contrary implied provision on this subject. *Noble Exploration, Inc. v.*

*Nixon Drilling Co., Inc.*, 794 S.W.2d 589, 592 (Tex.Ct.App.1990) (there can be no implied contract when an express contract exists covering the same term).[2] EDS is therefore entitled to summary judgment on Mr. Booth's wrongful discharge claims.

### 2. Defamation and Invasion of Privacy Claims [3]

■ The plaintiff claims that EDS made two sets of allegedly defamatory and false statements: (1) those made by EDS concerning the reason for the plaintiff's termination; and (2) EDS' disclosure to the national credit reporting system of the plaintiff's failure to pay the promissory note. To establish a viable claim of defamation, Mr. Booth must establish that EDS published statements that were both defamatory and false. *Ruebke v. Globe Communications Corp.*, 241 Kan. 595 Syl. ¶ 2, 738 P.2d 1246 (1987). Mr. Booth's second claim of defamation, relating to the report made to national credit reporting systems by EDS, must therefore fail because there is no evidence in the record indicating that EDS disclosed information that was false. Mr. Booth does not dispute that, under the terms of the promissory note, he was obligated to repay EDS, and he admits that he has made no attempt to fulfill this obligation. His defense that the note is unenforceable as a matter of law does not undermine the truthfulness of the report made by EDS.

■ EDS argues that Mr. Booth's first defamation claim should be dismissed because the publication requirement has not been met. In this case it was Mr. Booth, not EDS, who published the allegedly false and defamatory reasons for his termination. Mr. Booth claims that he felt compelled to tell potential employers about the

---

**2.** The existence of the express contract of employment that determined plaintiff's status as an at-will employee also precludes his promissory estoppel theory, which can only be advanced in the absence of an otherwise enforceable contract. *See Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F.Supp. 1154, 1168 (D.Kan.1990). Although the court could find no Texas case squarely on point, there is no indication that Texas would view the matter differently from

the general principles applied in *Pizza Management.*

**3.** Kansas law governs the plaintiff's noncontract claims against EDS because the alleged harm occurred in Kansas. *See Hawley v. Beech Aircraft Corp.*, 625 F.2d 991 (10th Cir.1980) (Kansas applies the principle of *lex loci delictus* (the law of the place where the wrong occurred) to determine conflict of laws questions); *McDaniel v. Sinn*, 194 Kan. 625, 400 P.2d 1018 (1965).

circumstances surrounding his termination from EDS during job interviews.

This type of coerced self-publication by the plaintiff may in some circumstances be imputed to the defendant. This court found in *Polson v. Davis*, 635 F.Supp. 1130, 1147 (D.Kan.1986) (O'Conner, C.J.), that voluntary statements to potential future employers made by the plaintiff/employee constitute publication by the defendant for purposes of sustaining a defamation claim. As the court noted, "Although a plaintiff's truly voluntary communication of a defamatory statement bars all recovery, a coerced repetition of the defamatory statement by the plaintiff has no such effect.... Under the circumstances, plaintiff was effectively coerced into repeating the accusation of 'unprofessional conduct.'" *Id.* Mr. Booth has therefore articulated a prima facie case of defamation.

 Certain communications, however, whether made by the employer or the employee to potential future employers, are protected by a qualified privilege. Kansas recognizes such a privilege "with respect to business or employment communications made in good faith and between individuals with a corresponding interest or duty in the subject matter of the communication." *Turner v. Halliburton Co.*, 240 Kan. 1, 8, 722 P.2d 1106 (1986). This privilege exists in the context of communications by a former employer to a potential employer concerning a job applicant, *id.*, and when an employee is coerced into voluntarily publishing allegedly defamatory comments. *Roles v. Boeing Military Airplanes*, No. 89–1330, slip op. at 8 (D.Kan. June 29, 1990) (1990 WL 110255), *aff'd*, 951 F.2d 1260 (10th Cir.1991) (Table). When such a qualified privilege exists, the plaintiff has the burden of establishing both that the statements were false and that they were made with actual malice, that is, "with actual evil-mindedness or specific intent to injure."[4] *Id.* Although the question of actual malice is normally one of fact, it may under some circumstances be an appropriate subject of a motion for summary judgment. *See Turner*, 240 Kan. at 8, 722 P.2d 1106. EDS claims that the plaintiff has not established that EDS acted with actual malice in making any statements concerning his termination. After reviewing the record, the court concludes that there is no evidence to suggest that the defendant acted with evil-mindedness or a specific intent to injure the plaintiff. Mr. Booth has therefore failed to satisfy the burden imposed upon him to come forward with evidence that there is a genuine issue for trial on this claim, making summary judgment appropriate for EDS. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

 Mr. Booth also asserts a state law tort claim against EDS for false light invasion of privacy, which rests primarily upon the same factual basis as his defamation claim. Courts treat false light invasion of privacy claims in essentially the same way that they treat defamation claims. *See Rinsley v. Brandt*, 446 F.Supp. 850, 854 (D.Kan.1977), *aff'd*, 700 F.2d 1304 (10th Cir.1983). The qualified privilege that precludes the plaintiff's defamation claim as to statements made to prospective employers also precludes his invasion of privacy claim. *See Munsell v. Ideal Food Stores*, 208 Kan. 909, 923, 494 P.2d 1063 (1972). Similarly, the fact that the statements made to the credit reporting agency were true precludes Mr. Booth's invasion of privacy claim as to those statements. *Rinsley*, 700 F.2d at 1307 (truth is an absolute defense to invasion of privacy claims). EDS is entitled to summary judgment on these claims. *See Dawson v. Associates Financial Servs. Co.*, 215 Kan. 814, 820–21, 529 P.2d 104 (1974) (in creditor-debtor situation, the right of debtor to privacy is subject to the right of creditor to take reasonable steps to collect the debt).

**3. Tortious Interference With a Business Advantage**

 The plaintiff claims that EDS' actions interfered with his ability to find other work. The defendant notes that the

---

4. Plaintiff proposes a different, more lenient standard for actual malice. That standard was offered by Justice Herd in his dissent in *Turner*, but was not accepted by the majority.

**1092**

plaintiff is required to show intentional misconduct to support this claim. *Turner v. Halliburton Co.,* 240 Kan. 1, 12, 722 P.2d 1106 (1986). EDS correctly argues that the qualified privilege that applies to the defendant as to the defamation claim also applies to the tortious interference claim. *Id.* at 13, 722 P.2d 1106. Because the plaintiff cannot establish actual malice, this claim must be dismissed as well. Moreover, there is no evidence that, by attempting to enforce its legal rights to collect under the promissory note, EDS can be liable to Mr. Booth for tortiously interfering with his future employment. Finally, Mr. Booth has provided no evidence to indicate that he was actually harmed by any of the defendant's actions. He has not shown that any potential employer asked for a credit report or denied him a job because of any action taken by EDS.

**4. Breach of the Duty of Good Faith and Fair Dealing Outside the Employment Context**

Mr. Booth alleges that three contracts other than the employee agreement—a noncompetition agreement (which is not a separate agreement but is a clause in the employee agreement), a relocation agreement, and the promissory note—exist and that EDS violated the duties of good faith and fair dealing that were implied in those contracts.

EDS contends that these are not really contracts outside of the employment context, and that therefore no cause of action for breach of the duty of good faith and fair dealing can be maintained. It is well settled that neither Texas nor Kansas recognizes a cause of action for breach of an implied duty of good faith and fair dealing in the employment context. *See Casas v. Wornick Co.,* 818 S.W.2d 466, 469 (Tex.Ct.App.1991); *Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723, 725 n. 2 (Tex.1990); *Morriss v. Coleman Co.,* 241 Kan. 501, 518, 738 P.2d 841 (1987). Because each of the contracts at issue is either a part of the employment agreement itself or integrally related to the employment relationship, these contracts must be considered a part of the employment context. *See generally Jones v. Kelley,* 614 S.W.2d 95, 98 (Tex.1981) (separate documents involved in one general transaction construed as one instrument); *Hardeman v. Parish,* 730 S.W.2d 813, 814 (Tex. Ct.App.1987) (same). Therefore, the plaintiff has not stated a claim upon which relief can be granted under the controlling state law.

**5. Restraint of Trade**

Mr. Booth seeks injunctive and monetary relief by claiming that the noncompetition agreement he entered into as a part of his employment agreement is an unlawful restraint of trade under K.S.A. § 50–101 *et seq.* He argues that he is entitled to relief even though the defendant did not attempt to enforce this agreement. According to the plaintiff, he did not seek employment in his chosen occupation after he was terminated because of the noncompetition clause.

Even assuming for the purposes of this motion that Mr. Booth is entitled to pursue this claim despite the fact that EDS never sought to enforce the noncompetition clause against him, Kansas does not recognize an independent private cause of action for violations of K.S.A. § 50–101. *See Barton v. Hackney,* 167 Kan. 754, 759–60, 208 P.2d 590 (1949) (noncompetition contract entered upon sale of restaurant not void on account of being in violation of statute against restraint of trade). Although such a claim may be viable as a matter of common law, the pretrial order, which is now binding on the parties, mentions only the statutory basis for the plaintiff's claim, without alleging any common law justification. Mr. Booth's attempt to support this claim with citations to Texas statutes and case law is not persuasive. EDS is entitled to summary judgment on this claim as it has been pled by the plaintiff.

**6. Duress and Extortion Claim**

The plaintiff contends that EDS should be held liable to him because it threatened to disclose, and in fact did disclose, that plaintiff was indebted to the

defendant on the promissory note. Additionally, Mr. Booth alleges that EDS improperly withheld a release of the noncompetition agreement until he would agree to acknowledge liability for the promissory note.

Plaintiff concedes, however, that it is not duress or extortion merely to enforce or threaten to enforce one's legal rights, such as the right EDS claims to collect the amount plaintiff owes on the note. *Browning v. Blair*, 169 Kan. 139, 148, 218 P.2d 233 (1950). Duress may be present if the threat to resort to legal process is made solely for the purpose of oppressing the other party, if the duress is coercive in effect, and if it is sufficient to overcome the free will of the victim. 25 Am.Jur.2d *Duress and Undue Influence* § 18, at 377. In light of the evidence in the record regarding the defendant's attempts to collect this debt from plaintiff, Mr. Booth's claim of duress and extortion is unfounded. He admitted in deposition testimony that he was not harassed by the defendant's employees during phone calls concerning the promissory note. The record reveals only that EDS attempted to assert its legal rights and collect on the note, first by contacting Mr. Booth, and then by contacting a credit agency. There is no indication that Mr. Booth was injured by any of the actions taken by EDS, even if those actions could be considered improper. The defendant is entitled to summary judgment on this claim.

### B. Federal Law Claim

■ Mr. Booth's sole remaining federal claim is for overtime compensation that he alleges he was unlawfully denied under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* EDS argues that it owes no overtime compensation to the plaintiff because he was an exempt employee under the FLSA, not entitled to overtime pay.

Administrative employees are exempt from the overtime provisions of the FLSA. 29 U.S.C. § 213(a)(1). The administrative regulations relating to the FLSA establish two tests for determining whether employees are "administrative employees" within the meaning of the exception. Under the "short test," which is set forth in 29 C.F.R. § 541.214, employees who receive more than $250 per week in salary and whose primary duties include work requiring the exercise of discretion and independent judgment are deemed to be administrative employees. EDS claims that Mr. Booth was such an employee.

Mr. Booth acknowledges that he was paid at least $473 per week, more than the $250 per week minimum required for the short test. He also concedes that, at least when he was in the first phase of the SED program, he regularly performed functions that required the exercise of discretion and judgment. Moreover, EDS points to FLSA regulations that suggest that data analysts like Mr. Booth are exempt employees. *See* 29 C.F.R. § 541.205(c)(7).

The plaintiff argues that the three phases of the SED program in which he was employed amount to three separate job positions. Although he seems to admit that he was an exempt administrative employee in phase one, he argues that his duties as a phase two employee did not involve discretionary work.[5] In that phase the plaintiff essentially was a student, learning skills that he would use later as a phase three employee. Mr. Booth argues that he is entitled to overtime compensation for the hours of overtime he worked in phase two of the program.

Mr. Booth has pointed to no evidence in the record that indicates that he or EDS considered phase two of the SED program to be a separate employment position. It is uncontroverted that Mr. Booth was hired as a systems engineer in the SED program. In the process of completing that program, employees were required to undergo three stages of on-the-job and classroom training. While Mr. Booth's responsibilities might have temporarily changed during the nine weeks of phase two training, his ultimate function as a systems engineer was to assist EDS customers, which involved exer-

---

5. Plaintiff was terminated shortly after he en- tered phase three of the program.

cising the same type of discretion and independent judgment that Mr. Booth exercised when he was in phase one. The court therefore concludes that Mr. Booth was at all times an exempt administrative employee, not entitled to overtime compensation.

### C. Defendant's Counterclaim

EDS also seeks summary judgment on its counterclaim for recovery under the promissory note. The plaintiff argues that the note lacked consideration because he was not entitled to keep the books used in the phase two training[6] and because the noncompetition agreement prevented him from using any knowledge he may have gained from the course. EDS counters that, even if it attempted to enforce the noncompetition agreement, Mr. Booth still benefitted from the training because he could use the knowledge he obtained after the noncompetition agreement expired. EDS argues that the plaintiff's contention goes more to the sufficiency of the consideration, not the existence of it.

 A written contract, such as the promissory note at issue, raises an initial presumption that consideration exists. *Cortez v. National Bank of Commerce,* 578 S.W.2d 476, 479 (Tex.Civ.App.1979). The party contesting the existence of consideration has the burden of proving its absence. *Id.* Here the parties' bargain was that Mr. Booth would receive educational training in exchange, in part, for his promise to pay for it by repaying the note should he resign or be terminated from EDS. See *Restatement (Second) of Contracts § 71.* The court finds that Mr. Booth has failed to overcome the presumption that consideration was present.

 Mr. Booth also claims that the note is ambiguous because it includes no definite terms of repayment. Further, he contends that it is unenforceable because EDS unilaterally removed one method of repayment (continued service with EDS for three years) by firing him. As EDS notes, plaintiff cites no authority for his arguments.

Moreover, the note clearly sets forth several alternative means of repayment, only one of which involved continued employment for three years. The other three alternatives applied to situations in which the employee either quit or was terminated.

 Whether a contract is ambiguous is a question of law for the court. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983); *Gulf & Basco Co. v. Buchanan,* 707 S.W.2d 655, 657 (Tex.Ct.App.1986). When a contract is not ambiguous, it is enforced according to its terms. *Republic Nat'l Life Ins. Co. v. Spillars,* 368 S.W.2d 92, 94 (Tex.1963). In this case, the promissory note was not ambiguous as a matter of law. Under the clear terms of this agreement, Mr. Booth agreed to pay EDS $9,000.00 if he was terminated during the first twenty-four months of employment after commencing phase two. It is uncontroverted that Mr. Booth was commencing phase two. It is uncontroverted that Mr. Booth was terminated less than twenty-four months after he completed phase two training, and that he has not paid any amount on the note. EDS is therefore entitled to a judgment as a matter of law in its favor on this counterclaim.

### III. CONCLUSION

Viewing the uncontroverted facts set forth in the record in the light most favorable to the plaintiff, the court concludes that Mr. Booth has failed to set forth a viable cause of action against the defendant. EDS' motion for summary judgment is therefore granted.

*It is therefore ordered by the court* that the defendant's motion for summary judgment (Doc. # 27) is granted. The plaintiff's complaint against the defendant is dismissed with prejudice, and the defendant is entitled to recover $9,000.00 on its counterclaim from the plaintiff.

IT IS SO ORDERED.

---

6. The promissory note was ostensibly given by plaintiff in consideration for the training he would receive. Its purpose was to protect the investment EDS made in its employees in case they chose to resign after receiving this training.